**SHATTERPROOF GLASS CORPORATION,**
**Appellant,**

v.

**Ned JAMES et al., Appellees.**

No. 17148.

Court of Civil Appeals of Texas,
Fort Worth.

April 23, 1971.

Rehearing Denied May 21, 1971.

Lyne, Klein & French, and Erich F. Klein, Jr., Dallas, for appellant.

Walker, Bishop & Larimore, Brown, Crowley, Simon & Peebles, and M. Hendricks Brown, Fort Worth, for appellee.

OPINION

LANGDON, Justice.

The plaintiff, Shatterproof Glass Corporation, appellant herein, instituted suit against defendants, James, Guinn and Head, a Certified Public Accounting partnership, and its individual partners, the appellees herein, alleging that such accounting firm had prepared Certified Audit Reports for four corporations and that Shatterproof had relied upon such audit reports in lending money and extending credit to such corporations. Shatterproof further alleged that the defendants were negligent in the preparations of such audit reports and that as a proximate result of such negligence, Shatterproof sustained damages in excess of $400,000.00. At the conclusion of the plaintiff's evidence, the trial court withdrew the case from the jury and rendered judgment in favor of the defendants that plaintiff take nothing.

We reverse and remand.

. Appellant, Shatterproof Glass Corporation, manufactures, distributes and sells automobile glass. In the summer of 1963, its president, W. B. Chase, contacted Buddy Paschal of Fort Worth, Texas, with respect to the latter acting as distributor for appellant in the Dallas-Fort Worth area through various corporations owned or controlled by Paschal. These corporations were Windshield Glass and Mirror Company, Auto Glass Company, Inc., Kool-King, Inc., and Buddy's Glass and Mirror, Inc. (hereinafter collectively referred to as the Paschal Enterprises).

In the summer of 1963, Paschal had requested the appellees to prepare Certified Audits on the Paschal Enterprises in order that he might obtain credit from the First National Bank. After being contacted by Chase, Paschal directly authorized appellees to release information to appellant. On September 13, 1963, Chase contacted appellee James with respect to the financial condition of the Paschal Enterprises. Certain information was furnished to ap-

pellant on September 14, 1963, and appellees knew that appellant was to be furnished a copy of the completed Certified Audit Reports on Paschal Enterprises. When Chase contacted appellee James with respect to the net worth of the Paschal Enterprises, he advised James that he was considering making the Paschal Enterprises a distributor of appellant and advised him that appellant acted as "bankers" for its distributors. Subsequently, appellee James' partner, Mr. Guinn, learned that Paschal planned to furnish a copy of the Certified Audit Reports to appellant.

Prior to the time Chase contacted appellee James, the latter had been advised by Paschal that Chase would want to know the financial position of the Paschal Enterprises and James worked "Just about everybody" in his organization all night long on September 13th to obtain an estimate of the Paschal Enterprises' financial position for appellant. The appellees made a separate and additional charge to Paschal Enterprises for professional services rendered by the appellees in supplying the financial information to appellant.

Appellees, according to their testimony, utilized the standards and procedures of the Committee on Auditing Procedures of the American Institute of Certified Public Accountants in the preparation of the audits in question, and admitted that, while it is recognized that the general rules may be subject to exceptions, the burden of justifying departures from the American Institute of Accountants' recommendations must be assumed by those who adopted other practices.

Appellee Guinn, the partner who did most of the work on the audit reports in question, testified that he was familiar with the publication "Auditing Standards and Procedures" published by the Committee on Auditing Procedures of the American Institute of Certified Public Accountants and that such publication was recognized as an authoritative source with respect to auditing. Appellant introduced in evidence the Rules of Professional Conduct promulgated by the Texas State Board of Public Accountancy pursuant to the Public Accountancy Act of 1945. An accountant violates these rules if he expresses an opinion on representations in financial statements which he has examined and (a) fails to disclose a material fact known to him, (b) fails to report any material misstatement known to him to appear in the financial statements, (c) fails to acquire sufficient information to warrant expression of an opinion, or (d) fails to direct attention to any material departure from generally accepted accounting principles, or to disclose any material omission of generally accepted auditing procedures.

The evidence offered by the appellant on the trial of this cause raised fact issues as to whether the appellees violated in a number of ways the above quoted rules and the Auditing Standards and Procedures of the American Institute of Certified Public Accountants in the preparation and publication of the unqualified audit reports concerning the financial condition of the Paschal Enterprises.

Among other matters the evidence presented issues of fact as to whether appellees violated accounting standards by failing to disclose a material fact known to them which was not disclosed in the financial statements to wit: that Buddy Paschal denied owing any part of the $31,000 receivable shown by the Audit Reports to be owed by him to Auto Glass. Second, appellees knew that the financial statement of Auto Glass contained a representation that Buddy Paschal owed Auto Glass $31,000 and Buddy Paschal, President of Auto Glass, denied any such debt. Third, the corporate books and financial records of the Paschal Enterprises were in such a condition that it was impossible for the appellees to acquire sufficient information to warrant expression of an opinion but in spite of such fact, appellees gave an unqualified opinion as to the financial conditions of such companies. Fourth, the appellees wholly failed to make any written

evaluation of internal control and relied upon a number of facts which were not contained in their work papers.

The appellees in the audit prepared by them failed to direct attention to alleged material departures from generally accepted accounting principles.

Evidence in this cause further established or raised issues of fact as to the following matters:

(1) The appellees in the preparation of the audits in question committed many acts which are denounced by the Rules of Professional Conduct of the Texas State Board of Public Accountancy.

(2) The appellees knew (a) that appellant was planning to lend money and extend credit to the Paschal Enterprises and (b) that the appellant would be furnished copies of, and rely upon, the Audit Reports prepared by them.

(3) The appellees charged an additional fee for obtaining and furnishing information to appellant with respect to the Paschal Enterprises.

(4) Appellant relied on the audits in question and but for such audits would not have loaned the Paschal Enterprises $425,-000.

(5) The Audit Reports represented that the Paschal Enterprises had a net worth of approximately $173,000 whereas in reality the liabilities of such companies exceeded their assets by approximately $150,000.

(6) Because of such deficit net worth, the Paschal Enterprises could not repay the $425,000 loaned to them by appellant and the appellant suffered damages as a result thereof in at least such amount.

The appellant's first ten points attack the action of the court in preemptorily withdrawing the case from the jury and rendering the take nothing judgment against it because it had introduced evidence presenting the fact issues above enumerated and many others. The appellant by such points urge that it is entitled to have such fact issues determined by the jury. We are in agreement with this position and sustain the points.

In essence the principal question to be resolved on this appeal is whether the appellees were under a duty to exercise due care to protect the appellant from injury and were liable for damages caused the appellant by their negligence even though they were not in privity of contract. In sustaining the appellant's points one through ten, both inclusive, we hold that the appellees were under a duty to exercise due care. Glanzer v. Shepard, 233 N.Y. 236, 135 N.E. 275, 23 A.L.R. 1425 (N.Y.Ct. of App., 1922).

In the case at bar the trial court based its action upon the strict application of the fraud theory which was first spelled out in Ultramares Corporation v. Touche, 255 N. Y. 170, 174 N.E. 441 (N.Y.Ct. of App., 1931). In Ultramares the accountants escaped liability to third parties where the proof would have supported a finding of negligence in a suit between the accountant and his client.

In American Indemnity Co. v. Ernst & Ernst, 106 S.W.2d 763 (Waco, Tex.Civ. App., 1937, error ref.), the plaintiff, a surety company, sued an accounting firm alleging that as a result of the accountants' failure to ascertain that an employee of the Mexia School District had been embezzling funds, the surety company had sustained a loss on a fidelity bond. On appeal the issue before the court was whether plaintiffs' cause of action was in contract and therefore under the four year statute or in tort and barred by the two year statute. The court in holding that such cause of action was in tort said:

"However, it has been held that where a party makes a false representtaion to another with the intent or knowledge that it should be exhibited or repeated to a third party for the purpose of deceiving him, the third party, if so deceived to his injury,

can maintain an action in tort against the party making the false statement for the damages resulting from the fraud."

With respect to the fraudulent or dishonest aspect of appellees' argument, it is sufficient to say that when misrepresentations are made, it is immaterial whether they be made innocently or deliberately or whether they be made with a fraudulent or dishonest intent. 25 T.J.2d 636.

As is evident from recent decisions involving investors and other persons who extend credit to corporations, the courts have replaced "privity" and "primary benefit" with the concepts of "good faith" and "common honesty". Fischer v. Kletz, 266 F.Supp. 180, 186 (USDCSDNY, 1967).

In Escott v. BarChris Construction Corporation, 283 F.Supp. 643 (U.S.D.C.S.D.N.Y., 1968), an accounting firm was held liable to third parties for an incorrect audit. The court said of the accountant:

" * * * He did not spend an adequate amount of time on a task of this magnitude. Most important of all, he was too easily satisfied with glib answers to his inquiries.

" * * * there were enough danger signals in the materials which he did examine to require some further investigation on his part. Generally accepted accounting standards required such further investigation under these circumstances. It is not always sufficient merely to ask questions."

The facts in Rusch Factors, Inc. v. Levin, 284 F.Supp. 85 (U.S.Dist.Ct., Rhode Island, 1968), are very nearly the same as in the case at bar. In Rusch a Rhode Island corporation sought financing from the plaintiff and requested certified financial statements. The statements prepared by the defendant accountant represented the corporation to be solvent by a substantial amount whereas in fact the corporation was insolvent. In reliance upon such statements the plaintiff loaned the corporation $337,000 plus. Subsequently, the corporation went into receivership and the plaintiff recovered only a portion of what it had loaned. The plaintiff then instituted suit against the accountant seeking recovery on the grounds that it had been injured as the result of its reliance upon the fraudulent or negligent misrepresentations contained in the financial statements which were certified to by the accountants.

The accountants in Rusch asserted, as do the appellees in this case, that the absence of privity of contract between them and plaintiff was a complete defense.

The court in the Rusch case reviewed many of the cases and numerous other authorities in the development of this particular field of law and concluded its opinion by rejecting the defense of privity. The court pointed out that the case of Fischer v. Kletz, 266 F.Supp. 180, supra, " * * * clearly weakens the authority of the Ultramares decision. In that case, the Court held that accountants may have a common-law duty to disclose to the investing and lending public the discovery of misrepresentations in their already issued and circulated financial statements. For a thorough treatment of the Fischer case, see Comment: Accountants' Liabilities to Third Parties Under Common Law and Federal Securities Law, 9 B.C.Ind. & Comm.L.Rev. 137 (1967)."

It was further said in Rusch that: "The case at bar is, in fact, far more akin to the case of Glanzer v. Shepard, 233 N.Y. 236, 135 N.E. 275, 23 A.L.R. 1425, another Cardozo opinion and the first case to extend to persons not in privity, liability for negligent misrepresentation causing pecuniary loss. In Glanzer a professional weigher contracted with a bean seller to weigh a shipment of beans and certify the weight to the bean buyer. The plaintiff bean buyer paid his seller for the beans in accordance with their weight as represented by the defendant's certificate. When it turned out that the weigher had overweighed, and hence that the buyer had overpaid, the Court allowed the buyer to

recover the difference from the misrepresenting weigher. The Court stated at 233 N.Y. 329–340 and 135 N.E. 276:

"In such circumstances, assumption of the task of weighing was the assumption of a duty to weigh carefully for the benefit of all whose conduct was to be governed. We do not need to state the duty in terms of contract or of privity. Growing out of a contract, it has nonetheless an origin not exclusively contractual. Given the contract and the relation, the duty is imposed by law. * * *

"In fact, the Glanzer principle has been applied to accountants. The tentative drafts of the Restatement (Second) of Torts § 552 states the rule of law as follows:

"(1) One who, in the course of his business, profession or employment, or in a transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

"(2) Except as stated in subsection (3), the liability stated in subsection (1) is limited to loss suffered (a) by the person or one of the persons for whose benefit and guidance he intends to supply the information, or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction which he intends the information to influence, or knows that the recipient so intends, or in a substantially similar transaction.

"(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any.of the transactions in which it is intended to protect them.

"The same tentative draft includes the following hypothetical illustration of the above-stated rule of law:

"A is negotiating with a bank for a credit of $50,000. The bank requires an audit by certified public accountants. A employs B & Company, a firm of accountants, to make the audit, telling them he is going to negotiate a bank loan. A does not get his loan from the first bank but does negotiate a loan with another bank, which relies upon B & Company's certified statements. The audit carelessly overstates the financial resources of A, and in consequence the second bank suffers pecuniary loss. B & Company is subject to liability to the second bank. Restatement (Second) of Torts § 552, Comments and Explanatory Notes, 13–16, 23–25 (Tent.Draft No. 12, 1966)."

In Rusch the court held that an accountant should be liable in negligence for careless financial misrepresentations relied upon by actually foreseen and limited classes of persons. In that case " * * * the defendant knew that his certification was to be used for, and had as its very aim and purpose, the reliance of potential financiers of the Rhode Island corporation." The appellees in the case at bar had the same knowledge.

Volume 44, Washington Law Review, p. 139 (1968) contains a comment entitled, "Auditors' Responsibility for Misrepresentation: Inadequate Protection for users of Financial Statements." The authors, Hallett and Collins, completed their thorough and exhaustive research in September, 1968. Reference is made to this comment beginning on page 139 and continuing through page 199, and the authorities there cited. The following language, beginning on page 191 of the Comment, is quoted verbatim:

"B. EXPANSION OF CIVIL LIABILITY BY JUDICIAL DEVELOPMENT

"The preceeding discussion has suggested the adoption of a generally applicable

negligence standard for civil liability, which would provide effective relief for statement users in third-party suits against auditors. One way in which this proposal could be implemented is by judicial decision at common law.

"The demise of privity in other areas of negligence law, notably in products liability cases, (MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916) suggests that the Ultramares rule could be judicially repudiated. Since Ultramares was decided, liability for property damage and economic harm have achieved increased recognition (Atlas Aluminum Corp. v. Borden Chemical Corp., 233 F.Supp. 53 (E.D.Pa.1964); Nakanishi v. Foster, 64 Wn.2d 647, 393 P.2d 635 (1964); Golden Gate Hop Ranch, Inc. v. Velsicol Chemical Corp., 66 Wn.2d 469, 403 P.2d 351 (1965); Santor v. A. & M. Karagheusian, Inc., 44 N.J. 52; 207 A.2d 305 (1965); 66 Colum.L.Rev. 917 (1966); 64 Mich.L.Rev. 1350 (1965)). Recently, architects have been held liable to parties not in contractual privity with them, despite earlier fears that such a broadened scope of liability would eliminate those professions. (15 Hastings L.J. 579 (1964)). And dicta in a recent case (Lucas v. Hamm [15 Cal.Rptr. 821], 364 P.2d 685) suggests that the California Supreme Court will hold attorneys liable for negligence to third parties.

"Nevertheless, in spite of recent extensions of liability in other professional fields, in auditor cases the courts continue to follow Ultramares and its privity requirement. Although dicta in a recent district court opinion (Rusch Factors, Inc. v. Levin, 284 F.Supp. 85 (D.R.I.1968)) on motion to dismiss suggests that that court might repudiate the Ultramares privity requirement given the opportunity to do so, courts have not yet held the auditor subject to liability to all those whom he should reasonably expect to rely on his certification of financial statements. (36 U.S.L.W. 1165, April 30, 1968). Experience in other fields suggests that auditor liability for negligence to third parties could rapidly be

established if one court were willing to take the initiative. (MacPherson v. Buick Motor Co., 217 N.Y. 382, 11 N.E. 1050, 1916). However, there is no indication that such a change is likely to occur in the near future."

A book entitled Professional Negligence by Roady and Andersen published in 1960 by the Vanderbilt University Press in Nashville, Tennessee, contains an article by Carl S. Hawkins of the University of Michigan Law School. The article is entitled "Professional Negligence Liability of Public Accountants." It begins on page 256 and continues through page 283. Part II, beginning on page 271, is devoted to the subject of Liability to Third Parties. Although published some eight years prior to the comment in the Washington Law Review it reviews the numerous authorities on the subject and emphasizes the need for a shift to the negligence doctrine enunciated in Restatement, Torts, § 552 (1938). Reference is made to this well written and carefully documented article by Professor Hawkins and to the authorities there cited.

With slight textual change the Restatement (Second), Torts, § 552 (Tent. Draft No. 12, 1966), above set forth, is very similar in its wording and we believe identical in meaning to Restatement, Torts, § 552 (1938) which was discussed by Hawkins.

We believe that the Restatement (Second), Torts, § 552 (Tent. Draft No. 12, 1966) should be adopted in Texas for application to cases of this nature.

Mr. Hawkins in his article was of the opinion that Restatement, Torts, § 552 (1938), was the correct approach to third party liability "rather than the tortured fraud theories that seem to have led us into the morass of gross negligence."

The shift "from negligence to fraud (to determine breach of duty), or from default to reasonable professional care to intent to deceive or cause harm" was neither desirable nor necessary. "It was not desira-

ble, because the accountant seeks to add value and prestige to his services by widespread reliance upon his professional skill and integrity. Therefore, the measure of his fault should be unreasonable failure of the skills held out for such reliance. It was not necessary because scope of duty in the negligence formula could have been adapted to the more restricted limits, while lack of reasonable care, or negligence, was still retained as the standard for determining breach of duty." Professional Negligence, supra, p. 278.

We find and hold that within the scope defined in Restatement, Second, Torts, § 552 (Tent. Draft No. 12, 1966), an accountant may be held liable to third parties who rely upon financial statements, audits, etc., prepared by the accountant in cases where the latter fails to exercise ordinary care in the preparation of such statements, audits, etc., and the third party because of such reliance suffers financial loss or damage.

Having sustained the first ten points we next discuss the problem raised by point eleven.

The very crux of the entire cause of action was whether the appellees failed to prepare the audit reports in accordance with generally accepted auditing standards including those of the American Institute of Certified Public Accountants. It would be important for the trier of the facts to know if the appellees were familiar with such standards. It is unlikely that appellees could prepare an audit pursuant to standards with which they were not familiar. In our opinion the learned trial judge erred in refusing to permit one of the appellees to answer questions propounded on cross-examination concerning his knowledge of the auditing standards involved. The appellant was entitled to test his knowledge of the rules and standards which govern and control the practice of his profession. Point eleven is sustained.

Points twelve and thirteen complain of the action of the court in sustaining exceptions to certain pleadings of the appellant. The pleadings involved did contain some specific allegations, however, because of the "general" and "shotgun" nature of other language in the allegations complained of the pleadings were subject to exception. We overrule these points. In event of another trial these matters may be repleaded and made more specific and certain so as to inform the appellees of the matters complained of.

Having discussed and ruled upon all points raised upon this appeal we next discuss some defensive matters raised by the appellees.

The appellees place great emphasis on the argument that the loans made by the appellant were not made to the Paschal Enterprises involved in the audits but instead were made only to National Glass and Distributing Company, Inc., which was incorporated in late 1963.

Each of the notes involved states that "For value received, *the undersigned,* jointly and severally, promise to pay to Shatterproof Glass Corporation, * * *." (Emphasis added.)

An examination of the notes involved reflects that, *"the undersigned"* consists of the Paschal Enterprises, i. e., Windshield Glass & Mirror Company, Auto-Glass Company, Inc., Kool-King, Inc., and Buddy's Glass and Mirror, Inc., and in addition thereto National Glass & Distributing, Inc.

The notes do not recite that they were given pursuant to the terms of a loan agreement between appellant and National Glass & Distributing, Inc. Each of the notes recites that same is given pursuant to and subject to the terms and conditions of a certain Loan Agreement executed between the undersigned and Shatterproof Glass Corporation. The undersigned are identical to those above named.

These matters together with those which were improperly excluded by the exceptions which were sustained may be repleaded and clarified by the parties before they once again assemble in the trial court for a trial on the merits of this cause.

The appellees argue that the appellant did not rely upon the audit reports prepared by them but instead relied upon their own auditor's appraisal of the Paschal Enterprises in advancing the money involved.

This argument is defensive in nature and such matters should be submitted to the trier of the facts, either the Court or the jury, for resolution.

This is also true of the argument of the appellees to the effect that even if the audit of the Paschal Enterprises had been correct in reflecting a net worth of $173,000.00 that the appellant would not be justified in lending $425,000.00 on the basis of such net worth. This, too, is a question of fact and defensive in nature.

The judgment of the trial court is reversed and the cause is remanded for trial on the merits consistent with this opinion.

Reversed and remanded.