Walter Fay AVERITT, Ronald G. Tefteller, Successor Trustee of the W.T. Averitt, III Trust, u/t/a Dated August 31, 1988, W.T. Averitt, III, and Shannon Averitt Medford, Appellants,

v.

PRICEWATERHOUSECOOPERS L.L.P., Appellee.

No. 2–01–014–CV.

Court of Appeals of Texas, Fort Worth.

Nov. 7, 2002.

Rehearing Overruled Dec. 12, 2002.

Canon & Gaston, P.C., Michael J. Canon, W. Clayton Gaston, Midland, for Appellant.

Jackson Walker L.L.P., Albon O. Head, Jr., Mark T. Josephs, William D. Ellerman, Fort Worth, for Appellee.

PANEL A: CAYCE, C.J., DAY and DAUPHINOT, JJ.

## OPINION

JOHN CAYCE, Chief Justice.

### Introduction

The primary issue we must decide in this case is whether an accounting firm can use a declaratory judgment action to obtain a declaration of nonliability for an alleged breach of an oral contract for accounting services pertaining to the formation of a trust. Because we hold that use of a declaratory judgment action is improper in this context, we reverse the trial court's judgment and render judgment dismissing the declaratory judgment cause of action.

## Procedural Background and Facts

Walter Fay Averitt (Mrs. Averitt) was a longstanding client of PriceWaterhouse-Coopers L.L.P. and its predecessors (collectively, PWC). PWC performed tax, consulting, and estate planning services for Mrs. Averitt, including preparing federal income tax returns, preparing personal financial statements, and providing tax consultation and representation before taxing authorities. In June 1988, PWC advised Mrs. Averitt to create a trust that would purchase her oil and gas interests. On August 31, 1988, the W.T. Averitt, III Trust was established and funded with an initial gift of $500. The Trust's primary beneficiary was Mrs. Averitt's son, W.T. Averitt, III; its secondary beneficiary was Averitt III's wife Gail, for as long as she remained married to Averitt III; and its tertiary beneficiary was Averitt III's daughter and Mrs. Averitt's granddaughter, Shannon Averitt Medford. Ultimately, the Trust assets would "skip" Averitt III's generation and pass to Medford. A principal purpose of the Trust was to enable Mrs. Averitt and her family to take advantage of the generation-skipping transfer tax exemption under the Internal Revenue Code.

After the Trust was created, PWC prepared and filed income tax returns for the Trust and reviewed its books and accounts until a new accountant was retained in January 1991. PWC also continued to perform tax, accounting, and estate planning services for Mrs. Averitt until 1990 or 1991.

Ronald G. Tefteller became the Trust's successor trustee in January 1990, following the death of the Trust's original trustee, Harry Ward. In the fall of 1995, Tefteller met with attorneys Michael J. Canon and Thomas Hood to discuss establishing a family limited partnership by Mrs. Averitt and Averitt III to accomplish certain estate planning objectives. During that meeting, Hood mentioned the use of certain generation-skipping devices in connection with the Averitt family's estate planning. After reviewing the Trust document, Hood asked whether a gift tax return had been filed at the time of or in connection with the formation of the Trust. Tefteller called PWC to confirm that the appropriate gift tax return and related filings had been made on behalf of Mrs. Averitt and the Trust. PWC assured Tefteller that all appropriate returns had been filed, but promised to check the file to be certain. PWC did not contact Tefteller again. PWC did, however, later tell Canon that PWC could not find the gift tax return. In 1998, after Hood inquired with the Internal Revenue Service, appellants discovered that PWC had never filed a gift tax return for the Trust.

Appellants initially sued "PriceWaterhouseCoopers Investments Advisors, L.L.C." in the Midland federal district court for breach of contract, accounting malpractice, breach of fiduciary duty, and fraud. Upon learning that they had not named the proper party, they nonsuited their federal suit. On April 22, 1999, they refiled their breach of fiduciary duty and fraud claims, this time against PWC, in state court in Midland County. Just two days earlier, however, on April 20, 1999, PWC had filed a declaratory judgment action against appellants in Tarrant County.

Appellants moved to transfer venue to Midland County and also filed a plea in abatement, asking the trial court to abate PWC's declaratory judgment action pending final adjudication of appellants' suit in Midland County. In addition, appellants moved for summary judgment on the grounds that PWC's use of the Uniform

Declaratory Judgments Act (the Act)[1] was inappropriate and that PWC had failed to state a cause of action for which declaratory relief could be granted. PWC also moved for summary judgment on the grounds that appellants had not incurred any tax liability and therefore could not state a cause of action against PWC and that PWC could not be liable to Tefteller, Averitt III, or Medford due to lack of privity.

The trial court denied appellants' motion to transfer venue, plea in abatement, and motion for summary judgment and granted summary judgment for PWC on its declaratory judgment claim. In three points on appeal, appellants contend that the trial court erred in denying their motions to transfer venue and for summary judgment and in granting summary judgment for PWC.

### Summary Judgment Standard of Review

■ When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex.2000). The reviewing court should render the judgment that the trial court should have rendered. *Id.*

■ In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison County. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999); *City of Houston v. Clear Creek Basin Auth.*, 589

S.W.2d 671, 678 (Tex.1979). The determination of whether a declaratory judgment action is proper is a question of law. *Paulsen v. Tex. Equal Access to Justice Found.*, 23 S.W.3d 42, 44 (Tex.App.-Austin 1999, pet. denied). Questions of law are appropriate matters for summary judgment. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222 (Tex.1999).

### Declaratory Judgments Act

In their first point, appellants contend that PWC is improperly using the Act to determine potential tort liability and that the trial court should have granted their motion for summary judgment on this ground. Appellants contend that PWC's declaratory judgment action is simply an attempt to obtain a judicial determination of its liability on appellants' accounting malpractice and negligent misrepresentation claims. In their second point, appellants complain that the trial court improperly granted PWC summary judgment on its declaratory judgment claim.

■■ The Act provides that an interested person under a deed, will, written contract, or other writings constituting a contract may have determined any question of construction or validity arising under the instrument and obtain a declaration of the rights, status, or other legal relations thereunder. TEX. CIV. PRAC. & REM.CODE ANN. § 37.004(a) (Vernon 1997). The matters enumerated in section 37.004 do not limit or restrict the general powers of a court of record to declare the rights, status, or other legal relations of the parties to a lawsuit, if such a declaration will terminate the controversy between the parties or remove an uncertainty. *Id.* § 37.003(a), (c). A potential defendant may not, however, use a declaratory judgment action to determine potential tort

---

1. TEX. CIV. PRAC. & REM CODE ANN. §§ 37.001 – .011 (Vernon 1997 & Supp.2002).

liability. *Abor v. Black,* 695 S.W.2d 564, 566–67 (Tex.1985); *Stein v. First Nat'l Bank,* 950 S.W.2d 172, 174 (Tex.App.-Austin 1997, no writ); *Hous. Auth. v. Valdez,* 841 S.W.2d 860, 865 (Tex.App.-Corpus Christi 1992, writ denied). The Act was not intended to deprive a potential tort plaintiff of the right to decide whether, when, and where to sue. *Abor,* 695 S.W.2d at 566; *Stein,* 950 S.W.2d at 174; *accord Trinity Universal Ins. Co. v. Sweatt,* 978 S.W.2d 267, 271 (Tex.App.-Fort Worth 1998, no pet.).

PWC asserts that its declaratory judgment action was proper due to its contractual relationship with Mrs. Averitt. PWC contends that any claim Mrs. Averitt could assert against it would have rested in contract because PWC's primary duty arose from its contractual relationship with her. PWC also relies on the fact that appellants' nonsuited federal lawsuit included a breach of contract claim. *See, e.g., Stein,* 950 S.W.2d at 175 (relying on pleadings in a previously filed, but dismissed, action by declaratory judgment defendants to determine true nature of controversy between parties).

■ Whether a written contract providing for professional services exists between a professional and his client or not, a cause of action based on the alleged failure to perform a professional service is a tort rather than a breach of contract. *See, e.g., Univ. Nat'l Bank v. Ernst & Whinney,* 773 S.W.2d 707, 710 (Tex.App.-San Antonio 1989, no writ); *Black v. Wills,* 758 S.W.2d 809, 814 (Tex.App.-Dallas 1988, no writ); *Gabel v. Sandoval,* 648 S.W.2d 398, 399 (Tex.App.-San Antonio 1983, writ dism'd); *see also Sledge v. Alsup,* 759 S.W.2d 1, 2 (Tex.App.-El Paso 1988, no writ) ("If a lawyer's error or mistake is actionable, it should give rise to a cause of action for legal malpractice...."). This is because a contract for professional services gives rise to a duty by the professional to exercise the degree of care, skill, and competence that reasonably competent members of the profession would exercise under similar circumstances. *See Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494 n. 1 (Tex.1991); *Greenstein, Logan & Co. v. Burgess Mktg., Inc.,* 744 S.W.2d 170, 185 (Tex.App.-Waco 1987, writ denied); *accord Univ. Nat'l Bank,* 773 S.W.2d at 710. Thus, in cases involving an alleged breach of a contract for professional services, the real issue remains one of whether the professional exercised that degree of care, skill, and diligence that professionals of ordinary skill and knowledge commonly possess and exercise. *Sledge,* 759 S.W.2d at 2.

■ Here, Mrs. Averitt engaged PWC to prepare a Trust designed to enable her and her family to take advantage of the generation-skipping transfer tax exemption under the Internal Revenue Code. In 1988, PWC prepared the Trust document, but did not file a gift tax return or related generation-skipping tax documentation with the IRS. The gravamen of appellants' federal court breach of contract claim against PWC was PWC's failure to prepare and file with the IRS a gift tax return or a generation-skipping tax exemption allocation for the Trust and its failure to inform appellants that such a tax return or exemption allocation was necessary to exempt any future increase in the value of the Trust corpus from the generation-skipping tax. Likewise, in its petition for declaratory judgment, PWC alleged that the suit arose out of professional services it had performed for Mrs. Averitt and appellants' contentions that PWC had failed to timely file a 1988 gift tax return for the Trust and failed to file a generation-skipping transfer tax allocation with the IRS. Specifically, PWC requested rendition of a

declaratory judgment deciding the following issues:

1) whether PWC breached the terms of its engagement with Mrs. Averitt;

2) whether Mrs. Averitt was damaged as a result of any alleged breach of the engagement by PWC;

3) whether PWC owed a duty to Tefteller, Averitt III, or Medford because they lacked contractual privity with PWC; and

4) whether any claims appellants could have brought against PWC were barred by the applicable statutes of limitations.

Accordingly, the principal issue in this case, as PWC acknowledged in its petition, is whether PWC owed a duty to appellants to file a gift tax return or related generation-skipping documents and, if so, whether PWC breached that duty. Under Texas law, this issue sounds in tort rather than contract and would necessarily require the fact finder to determine whether PWC exercised that degree of care that an ordinarily prudent accountant would exercise under similar circumstances.

■ PWC contends a declaratory judgment was proper because privity of contract is required to bring a malpractice or breach of contract claim against an accountant or other professional, and none of the appellants except Mrs. Averitt were in privity of contract with PWC as to the Trust. *See, e.g., Barcelo v. Elliott,* 923 S.W.2d 575, 577–79 (Tex.1996) (holding that attorney owes duty of care only to his or her client and, due to lack of privity, will beneficiaries whom the attorney did not represent have no cause of action against attorney). Not all of appellants' federal claims against PWC were based on PWC's contract with Mrs. Averitt, however. Appellants also pleaded a claim for fraud, alleging that PWC's representations to appellants that a gift tax return and a generation-skipping transfer tax allocation had been filed with the IRS were knowingly false or made with reckless disregard for the truth and that appellants relied on these representations to their detriment.

■ Even absent privity of contract, an accountant may be liable to third parties for damages arising from the accountant's misrepresentations if the non-clients can show that they were within the class of persons the accountant knew or should have known would be relying on his work. *Blue Bell, Inc. v. Peat, Marwick, Mitchell & Co.,* 715 S.W.2d 408, 412 (Tex. App.-Dallas 1986, writ ref'd n.r.e.) (op. on reh'g); *Shatterproof Glass Corp. v. James,* 466 S.W.2d 873, 876–77 (Tex.Civ.App.-Fort Worth 1971, writ ref'd n.r.e.). An accountant's liability to third parties for misrepresentations is not premised upon a fiduciary relationship, but upon whether the accountant intended or had reason to expect that the third parties would act in reliance upon the misrepresentation. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.,* 51 S.W.3d 573, 577–78 (Tex.2001); *Brown v. KPMG Peat Marwick,* 856 S.W.2d 742, 748 (Tex.App.-El Paso 1993, writ denied). Liability does not depend upon whether the misrepresentations were knowingly false or merely negligent. *Shatterproof Glass Corp.,* 466 S.W.2d at 877. Thus, a declaration of the parties' rights, status, and legal relations under the oral contract between PWC and Mrs. Averitt—even including a determination as to PWC's privity of contract with the remaining appellants—would not have terminated the controversy between the parties on appellants' fraud claim. Tex. Civ. Prac. & Rem.Code Ann. § 37.003(c); *see also Bonham State Bank v. Beadle,* 907 S.W.2d 465, 467 (Tex.1995) (holding that a declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and

status of the parties and the controversy will be resolved by the declaration sought).

 PWC also asserts that a declaratory judgment on any negligent misrepresentation claim appellants might have was proper because the summary judgment evidence conclusively established that PWC never made any actionable misrepresentations to appellants. Assuming without deciding that this assertion is true, PWC could not use a declaratory judgment action to determine its potential liability for negligent misrepresentation because negligent misrepresentation is a tort. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,* 991 S.W.2d 787, 791 (Tex.1999). Further, appellants have not pleaded a negligent misrepresentation claim against PWC; therefore, there is no controversy between the parties as to that claim. A declaratory judgment action can only be used to decide a real controversy, not a potential one. *See Bonham State Bank,* 907 S.W.2d at 467; *Stein,* 950 S.W.2d at 175 (both holding that a declaratory judgment is appropriate only if a justiciable controversy exists).

We hold that appellants established as a matter of law that PWC was improperly using its suit for declaratory judgment to determine potential tort liability. Consequently, the trial court erred by denying appellants' motion for summary judgment and in granting PWC summary judgment on its declaratory judgment claim. *See Spring Garden 79U, Inc. v. Stewart Title*

*Co.,* 874 S.W.2d 945, 947 (Tex.App.-Houston [1st Dist.] 1994, no writ) (holding that defendant-movant is entitled to summary judgment if it proves that the law does not recognize plaintiff's cause of action). We sustain appellants' first and second points.

## Conclusion

Because PWC's use of the Act to determine potential tort liability was improper, the trial court should have dismissed PWC's declaratory judgment suit. *See Abor,* 695 S.W.2d at 566 (holding that trial court should decline to exercise jurisdiction over declaratory judgment suit that seeks to determine potential tort liability because exercising jurisdiction will deprive real plaintiff of traditional right to choose time and place of suit); *Amaro v. Tex. State Bank,* 28 S.W.3d 789, 796 (Tex.App.-Corpus Christi 2000) (same), *aff'd as modified,* 87 S.W.3d 538 (Tex.2002) (op. on reh'g); *accord BHP Petro. Co. v. Millard,* 800 S.W.2d 838, 841 (Tex.1990). We reverse the trial court's summary judgment granting PWC a declaratory judgment and render judgment for appellants dismissing PWC's cause of action. Tex.R.App. P. 43.2(c).[2]

---

**2.** Because we hold that the trial court should have declined to exercise jurisdiction over PWC's declaratory judgment suit, we do not reach appellants' third point complaining that the trial court improperly denied their motion to transfer venue.