COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-380-CV

 

 

PARKER COUNTY VETERINARY                                           APPELLANTS

CLINIC, INC., D/B/A PARKER 

COUNTY VETERINARY HOSPITAL, 

INC., PAT JARRETT, INDIVIDUALLY, 

AND JARRETT PROPERTIES, LLC 

 

                                                   V.

 

GSBS BATENHORST, INC.                                                       APPELLEE

 

                                              ------------

 

             FROM
THE 43RD DISTRICT COURT OF PARKER COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








In one
issue, Appellants Parker County Veterinary Clinic, Inc., d/b/a Parker County
Veterinary Hospital, Inc., Pat Jarrett, and Jarrett Properties, LLC, argue that
the trial court erred by dismissing their claim against Appellee GSBS
Batenhorst, Inc., an architecture firm. 
Because we hold that the trial court erred by dismissing the claim, we
reverse the trial court=s order of dismissal and remand
this case to the trial court.

                                        Background
Facts

Appellants
and Appellee entered into an agreement for Appellee to design a new veterinary
clinic for Appellants.  This agreement
was in the form of a letter to Appellants from Appellee and signed by Thomas E.
Batenhorst, an architect with Appellee. 
In the letter agreement, Batenhorst stated, AOur
Design Services will include: 
. . . Research and apply local and state codes and city
ordinances.@

According
to Appellants= petition, Appellee solicited an
engineer to provide engineering services, and Appellants contracted with the
engineer to provide those services, with those services to be incorporated into
the work provided by Appellee.  The engineer=s plan
called for waste disposal at the clinic via a septic system.  Appellants secured financing to cover the
project based on the plans that included a septic system.








As the
project was nearing completion, the City of Hudson Oaks notified Appellants
that it could not issue a septic system permit because (1) Texas Commission on
Environmental Quality (TCEQ) regulations prohibit disposal of medical waste
through a septic system; (2) TCEQ regulations prohibit a septic system at the
location, which was too close to a waterway; and (3) the project had
insufficient space for a septic field. 
Appellants alleged in their petition that they had two options if they
wanted to operate a veterinary clinic at the site:  install a tanked wastewater disposal system
that would cost $18,000 a month, or pay for an extension of the city=s
wastewater line to the project at an estimated cost between $225,000 to
$250,000.  Appellants chose the second
option and obtained a loan for that purpose. 
Appellants alleged that to secure the loan, they were forced to offer as
collateral Avirtually all personal and
business assets.@ 
To cover the loan payments, Appellants had to convert Jarrett=s
existing clinic into a twenty-four-hour emergency clinic.

                                        Procedural
History

Appellants
sued Appellee and the engineer.  Appellee
filed a motion to dismiss, arguing that Appellants had failed to file a
certificate of merit as required under section 150.002 of the civil practice
and remedies code.[2]  The trial court granted the motion, and
Appellants filed this appeal.  They argue
that the trial court erred by dismissing their breach of contract suit under
section 150.002 when the contract specifically required the architect to A[r]esearch
and apply local and state codes and city ordinances.@








                                       Standard
of Review

We
review a trial court=s ruling on a motion to dismiss
for an abuse of discretion.[3]  To determine whether a trial court abused its
discretion, we must decide whether the trial court acted without reference to
any guiding rules or principles; in other words, we must decide whether the act
was arbitrary or unreasonable.[4]

Statutory
construction is a question of law, which we review de novo.[5]  Once we determine the proper construction of
a statute, we determine whether the trial court abused its discretion in the
manner in which it applied the statute to the instant case.[6]

                                    Former
Section 150.002








Section
150.002 requires a plaintiff to provide a Acertificate
of merit,@ that is, an affidavit from an
expert, in certain cases against certain professionals licensed by the state of
Texas, including engineers and architects.[7]  The affidavit must set forth Aat least
one negligent act, error, or omission claimed to exist and the factual basis
for each such claim.@[8]

The
section as originally adopted in 2003 applied to Aany
action for damages alleging professional negligence by a design professional.@[9]  This court has noted that the legislative
history does not provide any indication of the purpose for the statute.[10]  The Beaumont Court of Appeals has
nevertheless concluded that the legislature=s
purpose in adopting the statute was to weed out frivolous claims.[11]  A bill analysis for an amendment to the
statute also states that the statute was enacted for that purpose.[12]








                                        2005
Amendment








In 2005,
the legislature amended the statute.[13]  As amended, the section applied to actions Aarising
out of the provision of professional services.@[14]  The Austin, San Antonio, and Corpus Christi
Courts of Appeals have concluded that no certificate of merit is required under
amended section 150.002 when the plaintiff does not allege a negligent act,
error, or omission.[15]  In Kniestedt, the San Antonio Court of
Appeals held that the plain wording of the statute led to that conclusion
because otherwise the legislature would not have specified that the affidavit Ashall
set forth specifically at least one negligent act, error, or omission claimed
to exist.@[16]  In another case, that court again rejected
the idea that the statute applied to any claim with merely a Acausal
connection . . . to the rendition of professional services.@[17]  The court held that the plaintiff=s breach
of contract claim against an engineering firm did not arise out of the
provision of professional services because the acts complained of did not fit
within the occupation code=s
definition of the practice of engineers.[18]

In Landreth,
the Corpus Christi Court of Appeals agreed with the San Antonio court that the
statute did not apply when the plaintiff was not claiming a negligent act,
error, or omission.[19]  It remanded the case back to the trial court
to determine which of the plaintiff=s
claims, if any, were for professional services.[20]








The
Austin Court of Appeals similarly declined to expand the scope of section
150.002 to causes of action Agenerally
arising from@ services provided by licensed
professionals such as engineers and architects.[21]  The court noted that under a straightforward
reading of the plain language of statute, the filing of a certificate of merit
is not required for non-negligent causes of action.[22]

Even
though the bill analysis on the amendment provides that the statute was amended
to clarify, among other things, that the section applies when Athe suit
is for damages arising out of the providing of any professional
services, except a suit or action for the payment of fees for professional
services, rather than only suits alleging professional negligence,@[23] the
statute after amendment, by its plain language, nevertheless continues to
require the expert affiant to set forth Aat least
one negligent act, error, or omission claimed to exist and the factual
basis for each such claim.@[24]  To require such an affidavit outside the
context of a negligence cause of action would require an affidavit that had no
relevance to the suit and would render the statute meaningless.[25]








Appellee
argues that the dissenting opinion in Consolidated was correct that the
word Anegligent@ in the
statute only modifies the word Aact@ and
that the terms Aerror@ and Aomission@ stand
on their own and are not modified by the word Anegligent.@[26]  Thus, Appellee argues, the statute requires a
certificate of merit pointing out a negligent act, an error, or an omission,
and therefore the plain language requires a certificate of merit in this case.  We disagree with Appellee and agree with the
majority in Consolidated that under the rules of grammatical
construction, the word Anegligent@
modifies each of the nouns that follow it.[27]  Accordingly, we agree with our sister courts
of appeals and hold that this statute does not apply in a suit other than one
for negligence arising out of the provision of professional services.

                                         Appellants= Claim








Appellants
assert that because they brought a breach of contract action and section
150.002 applies only to negligence claims, they were not required to file a
certificate.  Appellee disagrees with
Appellants= characterization of their cause
of action as one for breach of contract. 
Because we are not bound by the labels used by the parties,[28]
we look to Appellants= pleadings and determine for
ourselves what claim Appellants assert.

As the
Supreme Court of Texas has noted, A>[W]hile
the general distinction between actions in contract and in tort is clearly
defined and well understood, it is often difficult to determine whether a
particular action is the one or the other.=@[29]  Over the years, the supreme court has
analyzed the distinction between tort and contract by analyzing the source of
the duty owed to the plaintiff, by considering the nature of the remedy sought
by the plaintiff, and, most recently, by conducting an analysis of both the
source of the duty and the nature of the remedy sought.[30]








In
looking at the source of the duty, while there is no universally accepted
method of classification, Agenerally
speaking, >actions in contract and in tort
are to be distinguished in that an action in contract is for the breach of a
duty arising out of a contract either express or implied, while an action in
tort is for a breach of duty imposed by law.=@[31]  Thus, when the plaintiff=s cause
of action arises only from the violation of a duty imposed by law, the cause of
action sounds in tort, and when the plaintiff=s cause
of action arises only from the violation of a duty imposed by contract, the
cause of action is for breach of contract.[32]  A contractual relationship between the
parties may create duties under both contract and tort law, and A[t]he
acts of a party may breach duties in tort or contract alone or simultaneously
in both.@[33]

The
nature of the remedy sought is also instructive on the issue.[34]  AWhen the
only loss or damage is to the subject matter of the contract, the plaintiff=s action
is ordinarily on the contract.@[35]








In this
case, the practice of architecture as defined by the occupations code includes Aprogramming
for construction projects, including identification of economic, legal, and
natural constraints and determination of the scope and spatial relationship of
functional elements.@[36]  Thus, because the practice of architecture
includes identifying the legal constraints of a project, which Appellants
contend Appellee failed to do, Appellants=
complaint implicates the quality of the professional services provided by
Appellee.[37]

But a
specific provision of the contract also gave rise to a duty on Appellee to
research and incorporate applicable laws, and it is the breach of this duty
that Appellants complain about.  Furthermore,
the damages sought were for economic loss directly related to the subject
matter of the contract itself.








In their
petition, Appellants asserted that Appellee breached the contract and caused Athe
direct and consequential damages of [Appellants] described herein.@  The damages described by Appellants related
to their having to secure additional financing in order to remedy Appellee=s error
and to obtain a permit to operate the business in the building for which
Appellee=s design
skills were solicited.  Appellants
asserted damages that were directly related to the subject matter of the contract.  Additionally, Appellants alleged that the vet
clinic for which they sought Appellee=s
services cannot be opened until Hudson Oaks completes construction of the
wastewaterline extension and that the city had not begun construction as of the
time of their pleadings.  They asserted
that because of this delay, they were incurring damages of additional interest
and lost profits.[38]  Appellants sought to recover economic damages
in order to put themselves in the position that they would have been in had it
not been for Appellee=s breach.[39]  These damages are contract damages.  Because Appellants complain about a breach of
a provision in a contract and seek contract damages, their claim appears to be
one for breach of contract.








Appellee
asserts that although Appellants frame their cause of action as one for breach
of contract, because of the nature of suits against professionals, Appellants= cause
of action sounds in tort.  In support,
Appellee points to this court=s
holding in Averitt v. PriceWaterhouseCoopers L.L.P.[40]  Averitt involved a dispute between
PriceWaterhouseCoopers (PWC) and Averitt, a longstanding client of PWC.[41]  In the context of a contractual relationship
between the parties, PWC performed tax, consulting, and estate planning
services for Averitt.[42]  In that role, PWC advised Averitt to create a
trust in order to take advantage of a tax exemption under the Internal Revenue
Code.[43]  Several years after the trust=s
creation, the trustee inquired as to whether a gift tax return had been filed
in connection with the trust=s
formation, and PWC assured the trustee that it had been done.[44]  It was subsequently discovered that PWC had
not filed a gift tax return.[45]








Averitt
and others (Averitt) sued PWC in federal court for breach of contract,
accounting malpractice, breach of fiduciary duty, and fraud.[46]  They nonsuited their claims after discovering
that they had named the wrong party but then refiled against PWC in state
court.[47]  Two days prior to their refiling, PWC filed a
declaratory judgment action against Averitt.[48]  Averitt moved for, among other things,
summary judgment on the ground that PWC failed to state a cause of action for
which declaratory relief could be granted.[49]  In response, PWC asserted that it had
properly brought a declaratory judgment action because any claim Averitt could
assert against it would be in contract as PWC=s
primary duty to her arose from their contractual relationship.[50]








This
court disagreed with PWC.  We noted that Aa
contract for professional services gives rise to a duty by the professional to
exercise the degree of care, skill, and competence that reasonably competent
members of the profession would exercise under similar circumstances.@[51]  We held that when a cause of action is based
on an alleged failure to perform a professional service, the issue is Awhether
the professional exercised that degree of care, skill, and diligence that
professionals of ordinary skill and knowledge commonly possess and exercise.@[52]  Thus, even if the parties have a contractual
relationship, the cause of action is a tort rather than for breach of
contract.  And in Averitt, the
issue, as acknowledged by PWC, was whether PWC owed a duty to Averitt to file a
gift tax return and, if it did, whether it breached that duty.[53]

Averitt is
distinguishable.  In that case, there was
no assertion that PWC breached any specific or particular provision of a
contract.  Thus, the contract between the
parties only served as the Afoundation
for the plaintiff=s right to enjoy the benefits of
the duty imposed by law.@[54]  That is, the parties had a contract in which
PWC agreed to perform professional services, and in so doing, PWC took on the
duty to perform its services with the degree of care applicable to
accountants.  When PWC breached that
duty, it gave rise to a cause of action in tort.[55]  But in that case, there was no discussion of
any specific contractual provision alleged to have been breached.








In this
case, as in Averitt, Appellee agreed to perform professional services
for Appellants, and by so doing, Appellee took on the duty to exercise the
degree of care, skill, and competence that reasonably competent architects
would exercise under similar circumstances.[56]  The breach of that duty would give rise to a
tort action.[57]  But Appellee also made promises to perform
specific acts in the contract.  If
Appellee breached a specific provision of the contract, that breach would also
give rise to a breach of contract action.[58]  Appellants pursued a contract action, as was
their right.[59]  Because Appellants brought a breach of
contract action, and because section 150.002 only applies to negligence
actions, we hold that Appellants were not required to file a certificate of
merit in this case.  













Appellee
argues that a certificate of merit from an architect would be necessary for the
trial court to determine if Appellants= claim
has merit because an architect=s
expertise is necessary to establish whether Appellee failed to adequately
perform under the contract.  It asserts
that Aapplying
a code or ordinance to a particular set of facts is most often subjective,
requiring some measure of judgment,@ and
that Appellee=s judgment must be measured by
the standard applicable to architects, which is beyond the common knowledge of
the trier of fact.  We disagree with
Appellee=s
conclusion.  There may well be fact
issues at trial, and expert testimony may be helpful to determine those fact issues,
but we disagree with Appellee that testimony as to whether Appellee breached an
architect=s standard of care would serve
any relevant purpose for the trial court prior to trial.  A trial court is perfectly capable of
determining whether the contract required Appellee to apply the law in its
design,[60]
whether the law prohibits the use of a septic system,[61]
and whether the design included a septic system.[62]  Thus, a certificate of merit would not be
required for the trial court to determine if the claim has merit.  Accordingly, we sustain Appellants= sole
issue.

                                             Conclusion

Having
sustained Appellants= issue, we reverse the trial
court=s order
of dismissal and remand this cause to the trial court for further proceedings.

 

 

LEE ANN DAUPHINOT

JUSTICE

PANEL:  CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

DELIVERED: November 19, 2009











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Civ. Prac. &
Rem. Code Ann. ' 150.002(a) (Vernon
2005).





[3]Jernigan v. Langley, 195 S.W.3d 91, 93 (Tex.
2006); Palladian Bldg. Co., Inc. v. Nortex Found. Designs, Inc., 165
S.W.3d 430, 433 (Tex. App.CFort Worth 2005, no pet.).





[4]Cire v. Cummings, 134 S.W.3d 835, 838B39 (Tex. 2004).





[5]Palladian Bldg., 165 S.W.3d at 436.





[6]Id.





[7]Tex. Civ. Prac. &
Rem. Code Ann. ' 150.002(a).





[8]Id.





[9]Act of June 2, 2003, 78th
Leg., R.S., ch. 204, ' 20.01, 2003 Tex.
Gen. Laws 847, 896B97 (amended as discussed
below).





[10]See Palladian Bldg., 165 S.W.3d at 436.





[11]See Criterium‑Farrell
Eng=rs v. Owens, 248 S.W.3d 395, 399
(Tex. App.CBeaumont 2008, no pet.)
(stating that Athe purpose of the
certificate of merit is to provide a basis for the trial court to conclude that
the plaintiff=s claims have merit@).





[12]Senate Comm. on State
Affairs, Bill Analysis, Tex. H.B. 854, 79th Leg., R.S. (2005) (stating that the
2003 legislation was passed Aprotecting engineers and architects from
frivolous lawsuits@), available at http://www.legis.state.tx.us/tlodocs/79R/analysis/html/HB00854E.htm;
see also Landreth v. Las Brisas Council of Co‑Owners, Inc., 285
S.W.3d 492, 496 (Tex. App.CCorpus Christi 2009, no pet.) (AChapter 150 may have been
enacted to limit actions against architects and engineers by ensuring that
there is some basis for the lawsuit.@).





[13]Act of May 12, 2005, 79th
Leg., R.S., ch. 189, ' 2, 2005 Tex. Gen.
Laws 348, 348; Act of May 18, 2005, 79th Leg., R.S., ch. 208, ' 2, 2005 Tex. Gen.
Laws 369, 370.  The legislature again
amended this statute in 2009.  See
Act of May 29, 2009, 81st Leg., R.S., ch. 789, ' 2, 2009 Tex. Sess.
Law. Serv. 1989, 1989.  The 2009
amendment was not retroactive and is not applicable here.  Our analysis in this opinion is limited to
the statute as amended in 2005; we make no determination of the effect of the
2009 amendment.  Throughout this opinion,
we use Asection 150.002@ to refer to the statute
as amended in 2005 but prior to the 2009 amendment.





[14]Tex. Civ. Prac. &
Rem. Code Ann. ' 150.002(a).





[15]See Landreth, 285 S.W.3d at 500; Consol.
Reinforcement, L.P. v. Carothers Executive Homes, Ltd., 271 S.W.3d 887, 892
(Tex. App.CAustin 2008, no pet.);
Kniestedt v. Sw. Sound & Elecs., 281 S.W.3d 452, 455 (Tex. App.CSan Antonio 2007, no
pet.).





[16]Kniestedt, 281 S.W.3d at 455.





[17]Gomez v. STFG, Inc., No. 04-07-00223-CV,
2007 WL 2846419, at *2B3 (Tex. App.CSan Antonio Oct. 3, 2007,
no pet.) (mem. op).





[18]Id.





[19]Landreth, 285 S.W.3d at 500.





[20]Id. at 500B01.





[21]Consol. Reinforcement, 271 S.W.3d at 892.





[22]Id. at 892B94.





[23]Senate Comm. on Bus.
& Commerce, Bill Analysis, Tex. H.B. 1573, 79th Leg., R.S., (2005)(emphasis
added), available at
http://www.legis.state.tx.us/tlodocs/79R/analysis/html/HB01573S.htm.





[24]Tex. Civ. Prac. &
Rem. Code Ann. ' 150.002(a)
(emphasis added).





[25]Consol. Reinforcement, 271 S.W.3d at 892 (ATo construe [section
150.002] to require an affidavit for non‑negligent causes of action would
render the requirement that the affidavit set forth a negligent act, error, or
omission meaningless.@).





[26]Id. at 897 (Waldrop, J.,
dissenting).





[27]Id. at 893 (citing cases and
a statute in support of its construction).





[28]Murphy v. Gruber, 241 S.W.3d 689, 697
(Tex. App.CDallas 2007, pet.
denied); see also Kimleco Petroleum, Inc. v. Morrison & Shelton, 91
S.W.3d 921, 924 (Tex. App.CFort Worth 2002, pet. denied) (disregarding the
theory pled by plaintiff and looking at the crux of the complaint to determine
whether the plaintiff asserted a claim for legal malpractice).





[29]Int=l Printing Pressmen &
Assistants= Union of N. Am. v.
Smith,
145 Tex. 399, 198 S.W.2d 729, 735 (1947).





[30]Formosa Plastics Corp.
USA v. Presidio Eng=rs & Contractors, Inc., 960 S.W.2d 41, 45 (Tex.
1998); Sw. Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494B95 (Tex. 1991).





[31]Int=l Printing Pressmen, 198 S.W.2d at 735.





[32]Id. at 735B36; see also DeLanney,
809 S.W.2d at 494.





[33]Jim Walter Homes, Inc. v.
Reed,
711 S.W.2d 617, 618 (Tex. 1986).





[34]DeLanney, 809 S.W.2d at 495.





[35]Id. at 494; see also Jim
Walter Homes, 711 S.W.2d at 618 (AWhen the injury is only the economic loss to the
subject of a contract, itself the action sounds in contract alone.@).





[36]Tex. Occ. Code Ann. ' 1051.001(7) (Vernon
2004).





[37]See Kimleco Petroleum,
91 S.W.3d at 924 (ARegardless of the theory
a plaintiff pleads, as long as the crux of the complaint is that the plaintiff=s attorney did not
provide adequate legal representation, the claim is one for legal malpractice.@).





[38]See Bowen v. Robinson, 227 S.W.3d 86, 96 (Tex.
App.CHouston [1st Dist.] 2006,
pet. denied) (noting that benefit-of-the-bargain damages in breach of contract
cases may include lost profits); see also Formosa Plastics, 960 S.W.2d
at 50 (noting that lost profits may be recovered under the
benefit-of-the-bargain measure of damages).





[39]See City of The Colony v.
N. Tex. Mun. Water Dist., 272 S.W.3d 699, 739 (Tex. App.CFort Worth 2008, pet. filed) (AThe normal measure of
damages in a breach of contract case is the benefit of the bargain, the purpose
of which is to restore the injured party to the economic position it would have
been in had the contract been performed.@); see also Mays v. Pierce, 203 S.W.3d
564, 577 (Tex. App.CHouston [14th Dist.] 2006,
pet. denied).





[40]89 S.W.3d 330 (Tex. App.CFort Worth 2002, no
pet.).





[41]Id. at 332.





[42]Id. 





[43]Id. 





[44]Id. 





[45]Id. 





[46]Id. 





[47]Id. 





[48]Id. 





[49]Id. at 332B33.





[50]Id. at 334.





[51]Id. 





[52]Id. 





[53]Id. at 335.





[54]Int=l Printing Pressmen, 198 S.W.2d at 735.





[55]See Averitt, 89
S.W.3d at 334.





[56]See id. 





[57]See Aranda v. Ins. Co. of
N. Am., 748 S.W.2d 210, 212 (Tex. 1988) (A>[A]ccompanying every
contract is a common law duty to perform with care, skill, reasonable
expedience and faithfulness the thing agreed to be done, and a negligent
failure to observe any of these conditions is a tort as well as a breach of
contract.=@) (quoting Montgomery
Ward & Co. v. Scharrenbeck, 146 Tex. 153, 157, 204 S.W.2d 508, 510
(1947)).





[58]See Jim Walter Homes, 711 S.W.2d at 618 (AThe acts of a party may
breach duties in tort or contract alone or simultaneously in both.@).





[59]See id.; see also Beck v. Law
Offices of Edwin J. (Ted) Terry, Jr., P.C., 284 S.W.3d 416, 427 (Tex. App.CAustin 2009, no pet.) (A[W]hen cases say that
clients cannot divide or fracture their negligence claims against their
attorneys into other claims, this does not mean that clients can sue their
attorneys only for negligence.@) (quoting Deutsch v. Hoover, Bax &
Slovacek, L.L.P, 97 S.W.3d 179, 189 (Tex. App.CHouston [14th Dist.]
2002, no pet.)); Murphy v. Gruber, 241 S.W.3d 689, 696B97 (Tex. App.CDallas 2007, pet. denied)
(recognizing that Aclaims regarding the
quality of the lawyer=s representation of the
client are professional negligence claims, but that not all claims by clients
against lawyers are professional negligence claims@).





[60]See Myrad Props., Inc. v.
LaSalle Bank Nat=l Ass=n, 252 S.W.3d 605, 617
n.10  (Tex. App.CAustin 2008, pet.
granted) (stating that expert opinion on proper interpretation of the legal
effect of a notice of substitute trustee=s sale and other instruments had Ano probative value@); Akin v. Santa Clara
Land Co., Ltd., 34 S.W.3d 334, 339 (Tex. App.CSan Antonio 2000, pet.
denied) (holding trial court did not abuse its discretion by excluding expert
testimony on the interpretation of an unambiguous lease agreement); Pegasus
Energy Group, Inc., v. Cheyenne Petroleum Co., 3 S.W.3d 112, 134 (Tex. App.CCorpus Christi 1999, pet.
denied) (holding that when a term in a contract had no specialized meaning
within the industry, expert testimony is not required to aid the court in its
legal interpretation of the provision).





[61]See E.H. Stafford Mfg.
Co. v. Wichita Sch. Supply Co., 118 Tex. 650, 23 S.W.2d 695, 697 (Tex. 1930) (AThe rule is too
elementary to require the citation of authority that all persons are
conclusively presumed to know the law.@); City of Dallas v. Coffin, 254 S.W.2d
203, 206 (Tex. Civ. App.CAustin1953, writ ref=d n.r.e.) (A[A] person, even though
he is a nonresident, who deals with property within the limits of an
incorporated city is charged with notice of ordinances of the city regulating
the use of such property.@); Shoemaker v. Harrington,
30 S.W.2d 539, 544 (Tex. Civ. App.CFort Worth 1930) (AAll persons are presumed
to know the law.@), aff=d, 48 S.W.2d 612 (Tex.
Comm=n. App. 1932, judgm=t adopted).





[62]See Mega Child Care, Inc.
v. Tex. Dep=t of Protective &
Regulatory Servs., 29 S.W.3d 303, 310 n.2 (Tex. App.CHouston [14th Dist.] 2000, no pet.) (noting that
expert testimony on issue of ultimate fact may be excluded A[w]here the trier of fact
is equally competent to form an opinion@ on the issue and that appellants= conduct did not appear
so complex as to require expert testimony on the issue of whether it complied
with the statute).