

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-380-CV

PARKER COUNTY VETERINARY
CLINIC, INC., D/B/A PARKER
COUNTY VETERINARY HOSPITAL,
INC., PAT JARRETT, INDIVIDUALLY,
AND JARRETT PROPERTIES, LLC

APPELLANTS

V.

GSBS BATENHORST, INC.

APPELLEE

------------

## FROM THE 43RD DISTRICT COURT OF PARKER COUNTY

------------

## MEMORANDUM OPINION[1]

------------

In one issue, Appellants Parker County Veterinary Clinic, Inc., d/b/a Parker

County Veterinary Hospital, Inc., Pat Jarrett, and Jarrett Properties, LLC, argue

that the trial court erred by dismissing their claim against Appellee GSBS

---

[1] *See* Tex. R. App. P. 47.4.

Batenhorst, Inc., an architecture firm. Because we hold that the trial court erred by dismissing the claim, we reverse the trial court's order of dismissal and remand this case to the trial court.

**Background Facts**

Appellants and Appellee entered into an agreement for Appellee to design a new veterinary clinic for Appellants. This agreement was in the form of a letter to Appellants from Appellee and signed by Thomas E. Batenhorst, an architect with Appellee. In the letter agreement, Batenhorst stated, "Our Design Services will include: . . . Research and apply local and state codes and city ordinances."

According to Appellants' petition, Appellee solicited an engineer to provide engineering services, and Appellants contracted with the engineer to provide those services, with those services to be incorporated into the work provided by Appellee. The engineer's plan called for waste disposal at the clinic via a septic system. Appellants secured financing to cover the project based on the plans that included a septic system.

As the project was nearing completion, the City of Hudson Oaks notified Appellants that it could not issue a septic system permit because (1) Texas Commission on Environmental Quality (TCEQ) regulations prohibit disposal of medical waste through a septic system; (2) TCEQ regulations prohibit a septic

2

system at the location, which was too close to a waterway; and (3) the project had insufficient space for a septic field. Appellants alleged in their petition that they had two options if they wanted to operate a veterinary clinic at the site: install a tanked wastewater disposal system that would cost $18,000 a month, or pay for an extension of the city's wastewater line to the project at an estimated cost between $225,000 to $250,000. Appellants chose the second option and obtained a loan for that purpose. Appellants alleged that to secure the loan, they were forced to offer as collateral "virtually all personal and business assets." To cover the loan payments, Appellants had to convert Jarrett's existing clinic into a twenty-four-hour emergency clinic.

**Procedural History**

Appellants sued Appellee and the engineer. Appellee filed a motion to dismiss, arguing that Appellants had failed to file a certificate of merit as required under section 150.002 of the civil practice and remedies code.[2] The trial court granted the motion, and Appellants filed this appeal. They argue that the trial court erred by dismissing their breach of contract suit under section 150.002 when the contract specifically required the architect to "[r]esearch and apply local and state codes and city ordinances."

---

[2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a) (Vernon 2005).

3

**Standard of Review**

We review a trial court's ruling on a motion to dismiss for an abuse of discretion.[3] To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.[4]

Statutory construction is a question of law, which we review de novo.[5] Once we determine the proper construction of a statute, we determine whether the trial court abused its discretion in the manner in which it applied the statute to the instant case.[6]

**Former Section 150.002**

Section 150.002 requires a plaintiff to provide a "certificate of merit," that is, an affidavit from an expert, in certain cases against certain professionals licensed by the state of Texas, including engineers and architects.[7] The

---

[3] *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Palladian Bldg. Co., Inc. v. Nortex Found. Designs, Inc.*, 165 S.W.3d 430, 433 (Tex. App.—Fort Worth 2005, no pet.).

[4] *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

[5] *Palladian Bldg.*, 165 S.W.3d at 436.

[6] *Id.*

[7] Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a).

4

affidavit must set forth "at least one negligent act, error, or omission claimed to exist and the factual basis for each such claim."[8]

The section as originally adopted in 2003 applied to "any action for damages alleging professional negligence by a design professional."[9] This court has noted that the legislative history does not provide any indication of the purpose for the statute.[10] The Beaumont Court of Appeals has nevertheless concluded that the legislature's purpose in adopting the statute was to weed out frivolous claims.[11] A bill analysis for an amendment to the statute also states that the statute was enacted for that purpose.[12]

---

[8] *Id.*

[9] Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 20.01, 2003 Tex. Gen. Laws 847, 896–97 (amended as discussed below).

[10] *See Palladian Bldg.*, 165 S.W.3d at 436.

[11] *See Criterium-Farrell Eng'rs v. Owens*, 248 S.W.3d 395, 399 (Tex. App.—Beaumont 2008, no pet.) (stating that "the purpose of the certificate of merit is to provide a basis for the trial court to conclude that the plaintiff's claims have merit").

[12] Senate Comm. on State Affairs, Bill Analysis, Tex. H.B. 854, 79th Leg., R.S. (2005) (stating that the 2003 legislation was passed "protecting engineers and architects from frivolous lawsuits"), *available at* http://www.legis.state.tx.us/tlodocs/79R/analysis/html/HB00854E.htm; *see also Landreth v. Las Brisas Council of Co-Owners, Inc.*, 285 S.W.3d 492, 496 (Tex. App.—Corpus Christi 2009, no pet.) ("Chapter 150 may have been enacted to limit actions against architects and engineers by ensuring that there is some basis for the lawsuit.").

## 2005 Amendment

In 2005, the legislature amended the statute.[13] As amended, the section applied to actions "arising out of the provision of professional services."[14] The Austin, San Antonio, and Corpus Christi Courts of Appeals have concluded that no certificate of merit is required under amended section 150.002 when the plaintiff does not allege a negligent act, error, or omission.[15] In *Kniestedt*, the San Antonio Court of Appeals held that the plain wording of the statute led to that conclusion because otherwise the legislature would not have specified that the affidavit "shall set forth specifically at least one negligent act, error, or omission claimed to exist."[16] In another case, that court again rejected the idea

---

[13] Act of May 12, 2005, 79th Leg., R.S., ch. 189, § 2, 2005 Tex. Gen. Laws 348, 348; Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 370. The legislature again amended this statute in 2009. *See* Act of May 29, 2009, 81st Leg., R.S., ch. 789, § 2, 2009 Tex. Sess. Law. Serv. 1989, 1989. The 2009 amendment was not retroactive and is not applicable here. Our analysis in this opinion is limited to the statute as amended in 2005; we make no determination of the effect of the 2009 amendment. Throughout this opinion, we use "section 150.002" to refer to the statute as amended in 2005 but prior to the 2009 amendment.

[14] Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a).

[15] *See Landreth*, 285 S.W.3d at 500; *Consol. Reinforcement, L.P. v. Carothers Executive Homes, Ltd.*, 271 S.W.3d 887, 892 (Tex. App.—Austin 2008, no pet.); *Kniestedt v. Sw. Sound & Elecs.*, 281 S.W.3d 452, 455 (Tex. App.—San Antonio 2007, no pet.).

[16] *Kniestedt*, 281 S.W.3d at 455.

6

that the statute applied to any claim with merely a "causal connection . . . to the rendition of professional services."[17]  The court held that the plaintiff's breach of contract claim against an engineering firm did not arise out of the provision of professional services because the acts complained of did not fit within the occupation code's definition of the practice of engineers.[18]

In *Landreth*, the Corpus Christi Court of Appeals agreed with the San Antonio court that the statute did not apply when the plaintiff was not claiming a negligent act, error, or omission.[19]  It remanded the case back to the trial court to determine which of the plaintiff's claims, if any, were for professional services.[20]

The Austin Court of Appeals similarly declined to expand the scope of section 150.002 to causes of action "generally arising from" services provided by licensed professionals such as engineers and architects.[21]  The court noted

---

[17] *Gomez v. STFG, Inc.*, No. 04-07-00223-CV, 2007 WL 2846419, at *2–3 (Tex. App.—San Antonio Oct. 3, 2007, no pet.) (mem. op.).

[18] *Id.*

[19] *Landreth*, 285 S.W.3d at 500.

[20] *Id.* at 500–01.

[21] *Consol. Reinforcement*, 271 S.W.3d at 892.

7

that under a straightforward reading of the plain language of statute, the filing of a certificate of merit is not required for non-negligent causes of action.[22]

Even though the bill analysis on the amendment provides that the statute was amended to clarify, among other things, that the section applies when "the suit is for damages arising out of the providing of *any* professional services, except a suit or action for the payment of fees for professional services, rather than *only* suits alleging professional negligence,"[23] the statute after amendment, by its plain language, nevertheless continues to require the expert affiant to set forth "at least one *negligent* act, error, or omission claimed to exist and the factual basis for each such claim."[24]  To require such an affidavit outside the context of a negligence cause of action would require an affidavit that had no relevance to the suit and would render the statute meaningless.[25]

---

[22] *Id.* at 892–94.

[23] Senate Comm. on Bus. & Commerce, Bill Analysis, Tex. H.B. 1573, 79th Leg., R.S., (2005)(emphasis added), *available at* http://www.legis.state.tx.us/tlodocs/79R/analysis/html/HB01573S.htm.

[24] Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a) (emphasis added).

[25] *Consol. Reinforcement*, 271 S.W.3d at 892 ("To construe [section 150.002] to require an affidavit for non-negligent causes of action would render the requirement that the affidavit set forth a negligent act, error, or omission meaningless.").

Appellee argues that the dissenting opinion in *Consolidated* was correct that the word "negligent" in the statute only modifies the word "act" and that the terms "error" and "omission" stand on their own and are not modified by the word "negligent."[26] Thus, Appellee argues, the statute requires a certificate of merit pointing out a negligent act, an error, or an omission, and therefore the plain language requires a certificate of merit in this case. We disagree with Appellee and agree with the majority in *Consolidated* that under the rules of grammatical construction, the word "negligent" modifies each of the nouns that follow it.[27] Accordingly, we agree with our sister courts of appeals and hold that this statute does not apply in a suit other than one for negligence arising out of the provision of professional services.

**Appellants' Claim**

Appellants assert that because they brought a breach of contract action and section 150.002 applies only to negligence claims, they were not required to file a certificate. Appellee disagrees with Appellants' characterization of their cause of action as one for breach of contract. Because we are not bound by

---

[26] *Id.* at 897 (Waldrop, J., dissenting).

[27] *Id.* at 893 (citing cases and a statute in support of its construction).

the labels used by the parties,[28] we look to Appellants' pleadings and determine for ourselves what claim Appellants assert.

As the Supreme Court of Texas has noted, "'[W]hile the general distinction between actions in contract and in tort is clearly defined and well understood, it is often difficult to determine whether a particular action is the one or the other.'"[29] Over the years, the supreme court has analyzed the distinction between tort and contract by analyzing the source of the duty owed to the plaintiff, by considering the nature of the remedy sought by the plaintiff, and, most recently, by conducting an analysis of both the source of the duty and the nature of the remedy sought.[30]

In looking at the source of the duty, while there is no universally accepted method of classification, "generally speaking, 'actions in contract and in tort are to be distinguished in that an action in contract is for the breach of a duty

---

[28] *Murphy v. Gruber*, 241 S.W.3d 689, 697 (Tex. App.—Dallas 2007, pet. denied); *see also Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 924 (Tex. App.—Fort Worth 2002, pet. denied) (disregarding the theory pled by plaintiff and looking at the crux of the complaint to determine whether the plaintiff asserted a claim for legal malpractice).

[29] *Int'l Printing Pressmen & Assistants' Union of N. Am. v. Smith,* 145 Tex. 399, 198 S.W.2d 729, 735 (1947).

[30] *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998); *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex. 1991).

arising out of a contract either express or implied, while an action in tort is for a breach of duty imposed by law.'"[31] Thus, when the plaintiff's cause of action arises only from the violation of a duty imposed by law, the cause of action sounds in tort, and when the plaintiff's cause of action arises only from the violation of a duty imposed by contract, the cause of action is for breach of contract.[32] A contractual relationship between the parties may create duties under both contract and tort law, and "[t]he acts of a party may breach duties in tort or contract alone or simultaneously in both."[33]

The nature of the remedy sought is also instructive on the issue.[34] "When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract."[35]

In this case, the practice of architecture as defined by the occupations code includes "programming for construction projects, including identification of economic, legal, and natural constraints and determination of the scope and

---

[31] *Int'l Printing Pressmen,* 198 S.W.2d at 735.

[32] *Id.* at 735–36; *see also DeLanney*, 809 S.W.2d at 494.

[33] *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).

[34] *DeLanney*, 809 S.W.2d at 495.

[35] *Id.* at 494; *see also Jim Walter Homes*, 711 S.W.2d at 618 ("When the injury is only the economic loss to the subject of a contract, itself the action sounds in contract alone.").

11

spatial relationship of functional elements."[36] Thus, because the practice of architecture includes identifying the legal constraints of a project, which Appellants contend Appellee failed to do, Appellants' complaint implicates the quality of the professional services provided by Appellee.[37]

But a specific provision of the contract also gave rise to a duty on Appellee to research and incorporate applicable laws, and it is the breach of this duty that Appellants complain about. Furthermore, the damages sought were for economic loss directly related to the subject matter of the contract itself.

In their petition, Appellants asserted that Appellee breached the contract and caused "the direct and consequential damages of [Appellants] described herein." The damages described by Appellants related to their having to secure additional financing in order to remedy Appellee's error and to obtain a permit to operate the business in the building for which Appellee's design skills were solicited. Appellants asserted damages that were directly related to the subject matter of the contract. Additionally, Appellants alleged that the vet clinic for which they sought Appellee's services cannot be opened until Hudson Oaks

---

[36] Tex. Occ. Code Ann. § 1051.001(7) (Vernon 2004).

[37] *See Kimleco Petroleum*, 91 S.W.3d at 924 ("Regardless of the theory a plaintiff pleads, as long as the crux of the complaint is that the plaintiff's attorney did not provide adequate legal representation, the claim is one for legal malpractice.").

completes construction of the wastewaterline extension and that the city had not begun construction as of the time of their pleadings. They asserted that because of this delay, they were incurring damages of additional interest and lost profits.[38] Appellants sought to recover economic damages in order to put themselves in the position that they would have been in had it not been for Appellee's breach.[39] These damages are contract damages. Because Appellants complain about a breach of a provision in a contract and seek contract damages, their claim appears to be one for breach of contract.

Appellee asserts that although Appellants frame their cause of action as one for breach of contract, because of the nature of suits against professionals, Appellants' cause of action sounds in tort. In support, Appellee points to this court's holding in *Averitt v. PriceWaterhouseCoopers L.L.P.*[40] *Averitt* involved

---

[38] *See Bowen v. Robinson*, 227 S.W.3d 86, 96 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (noting that benefit-of-the-bargain damages in breach of contract cases may include lost profits); *see also Formosa Plastics*, 960 S.W.2d at 50 (noting that lost profits may be recovered under the benefit-of-the-bargain measure of damages).

[39] *See City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 739 (Tex. App.—Fort Worth 2008, pet. filed) ("The normal measure of damages in a breach of contract case is the benefit of the bargain, the purpose of which is to restore the injured party to the economic position it would have been in had the contract been performed."); *see also Mays v. Pierce*, 203 S.W.3d 564, 577 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

[40] 89 S.W.3d 330 (Tex. App.—Fort Worth 2002, no pet.).

13

a dispute between PriceWaterhouseCoopers (PWC) and Averitt, a longstanding client of PWC.[41] In the context of a contractual relationship between the parties, PWC performed tax, consulting, and estate planning services for Averitt.[42] In that role, PWC advised Averitt to create a trust in order to take advantage of a tax exemption under the Internal Revenue Code.[43] Several years after the trust's creation, the trustee inquired as to whether a gift tax return had been filed in connection with the trust's formation, and PWC assured the trustee that it had been done.[44] It was subsequently discovered that PWC had not filed a gift tax return.[45]

Averitt and others (Averitt) sued PWC in federal court for breach of contract, accounting malpractice, breach of fiduciary duty, and fraud.[46] They nonsuited their claims after discovering that they had named the wrong party but then refiled against PWC in state court.[47] Two days prior to their refiling,

---

[41] *Id.* at 332.

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.*

14

PWC filed a declaratory judgment action against Averitt.[48]  Averitt moved for, among other things, summary judgment on the ground that PWC failed to state a cause of action for which declaratory relief could be granted.[49]  In response, PWC asserted that it had properly brought a declaratory judgment action because any claim Averitt could assert against it would be in contract as PWC's primary duty to her arose from their contractual relationship.[50]

This court disagreed with PWC.  We noted that "a contract for professional services gives rise to a duty by the professional to exercise the degree of care, skill, and competence that reasonably competent members of the profession would exercise under similar circumstances."[51]  We held that when a cause of action is based on an alleged failure to perform a professional service, the issue is "whether the professional exercised that degree of care, skill, and diligence that professionals of ordinary skill and knowledge commonly possess and exercise."[52]  Thus, even if the parties have a contractual relationship, the cause of action is a tort rather than for breach of contract.

---

[48] *Id.*

[49] *Id.* at 332–33.

[50] *Id.* at 334.

[51] *Id.*

[52] *Id.*

15

And in *Averitt*, the issue, as acknowledged by PWC, was whether PWC owed a duty to Averitt to file a gift tax return and, if it did, whether it breached that duty.[53]

*Averitt* is distinguishable. In that case, there was no assertion that PWC breached any specific or particular provision of a contract. Thus, the contract between the parties only served as the "foundation for the plaintiff's right to enjoy the benefits of the duty imposed by law."[54] That is, the parties had a contract in which PWC agreed to perform professional services, and in so doing, PWC took on the duty to perform its services with the degree of care applicable to accountants. When PWC breached that duty, it gave rise to a cause of action in tort.[55] But in that case, there was no discussion of any specific contractual provision alleged to have been breached.

In this case, as in *Averitt*, Appellee agreed to perform professional services for Appellants, and by so doing, Appellee took on the duty to exercise the degree of care, skill, and competence that reasonably competent architects would exercise under similar circumstances.[56] The breach of that duty would

---

[53] *Id.* at 335.

[54] *Int'l Printing Pressmen,* 198 S.W.2d at 735.

[55] See *Averitt*, 89 S.W.3d at 334.

[56] *See id.*

16

give rise to a tort action.[57] But Appellee also made promises to perform specific

acts in the contract.  If Appellee breached a specific provision of the contract,

that breach would also give rise to a breach of contract action.[58]  Appellants

pursued a contract action, as was their right.[59]  Because Appellants brought a

breach of contract action, and because section 150.002 only applies to

negligence actions, we hold that Appellants were not required to file a

certificate of merit in this case.

Appellee argues that a certificate of merit from an architect would be

necessary for the trial court to determine if Appellants' claim has merit because

---

[57] *See Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 212 (Tex. 1988) ("'[A]ccompanying every contract is a common law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort as well as a breach of contract.'") (quoting *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 157, 204 S.W.2d 508, 510 (1947)).

[58] *See Jim Walter Homes*, 711 S.W.2d at 618 ("The acts of a party may breach duties in tort or contract alone or simultaneously in both.").

[59] *See id.*; *see also Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 427 (Tex. App.—Austin 2009, no pet.) ("[W]hen cases say that clients cannot divide or fracture their negligence claims against their attorneys into other claims, this does not mean that clients can sue their attorneys only for negligence.") (quoting *Deutsch v. Hoover, Bax & Slovacek, L.L.P*, 97 S.W.3d 179, 189 (Tex. App.—Houston [14th Dist.] 2002, no pet.)); *Murphy v. Gruber*, 241 S.W.3d 689, 696–97 (Tex. App.—Dallas 2007, pet. denied) (recognizing that "claims regarding the quality of the lawyer's representation of the client are professional negligence claims, but that not all claims by clients against lawyers are professional negligence claims").

an architect's expertise is necessary to establish whether Appellee failed to adequately perform under the contract. It asserts that "applying a code or ordinance to a particular set of facts is most often subjective, requiring some measure of judgment," and that Appellee's judgment must be measured by the standard applicable to architects, which is beyond the common knowledge of the trier of fact. We disagree with Appellee's conclusion. There may well be fact issues at trial, and expert testimony may be helpful to determine those fact issues, but we disagree with Appellee that testimony as to whether Appellee breached an architect's standard of care would serve any relevant purpose for the trial court prior to trial. A trial court is perfectly capable of determining whether the contract required Appellee to apply the law in its design,[60] whether the law prohibits the use of a septic system,[61] and whether the design included

---

[60] *See Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 252 S.W.3d 605, 617 n.10 (Tex. App.—Austin 2008, pet. granted) (stating that expert opinion on proper interpretation of the legal effect of a notice of substitute trustee's sale and other instruments had "no probative value"); *Akin v. Santa Clara Land Co., Ltd.*, 34 S.W.3d 334, 339 (Tex. App.—San Antonio 2000, pet. denied) (holding trial court did not abuse its discretion by excluding expert testimony on the interpretation of an unambiguous lease agreement); *Pegasus Energy Group, Inc., v. Cheyenne Petroleum Co.*, 3 S.W.3d 112, 134 (Tex. App.—Corpus Christi 1999, pet. denied) (holding that when a term in a contract had no specialized meaning within the industry, expert testimony is not required to aid the court in its legal interpretation of the provision).

[61] *See E.H. Stafford Mfg. Co. v. Wichita Sch. Supply Co.*, 118 Tex. 650, 23 S.W.2d 695, 697 (Tex. 1930) ("The rule is too elementary to require the citation of authority that all persons are conclusively presumed to know the

a septic system.[62]  Thus, a certificate of merit would not be required for the trial court to determine if the claim has merit.  Accordingly, we sustain Appellants' sole issue.

### Conclusion

Having sustained Appellants' issue, we reverse the trial court's order of dismissal and remand this cause to the trial court for further proceedings.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

DELIVERED: November 19, 2009

---

law."); *City of Dallas v. Coffin*, 254 S.W.2d 203, 206 (Tex. Civ. App.—Austin1953, writ ref'd n.r.e.) ("[A] person, even though he is a nonresident, who deals with property within the limits of an incorporated city is charged with notice of ordinances of the city regulating the use of such property."); *Shoemaker v. Harrington*, 30 S.W.2d 539, 544 (Tex. Civ. App.—Fort Worth 1930) ("All persons are presumed to know the law."), *aff'd*, 48 S.W.2d 612 (Tex. Comm'n. App. 1932, judgm't adopted).

[62] *See Mega Child Care, Inc. v. Tex. Dep't of Protective & Regulatory Servs.*, 29 S.W.3d 303, 310 n.2 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (noting that expert testimony on issue of ultimate fact may be excluded "[w]here the trier of fact is equally competent to form an opinion" on the issue and that appellants' conduct did not appear so complex as to require expert testimony on the issue of whether it complied with the statute).

19