

NUMBER 13-08-148-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

GORDON E. LANDRETH, ET AL.,                                    Appellants,

v.

LAS BRISAS COUNCIL OF
CO-OWNERS, INC.,                                               Appellee.

## On appeal from the 214th District Court
of Nueces County, Texas

# OPINION

### Before Justices Yañez, Garza, and Vela
### Opinion by Justice Vela

This is an interlocutory appeal from an order denying the amended motion of

appellants, Gorden E. Landreth and Cotten, Landreth, Kramer Architects & Associates,

Inc.'s (collectively "Cotten Landreth") to dismiss a case alleging architectural malpractice.

By three issues, appellants argue that the trial court abused its discretion in failing to

dismiss the case filed against them.  We reverse and remand.

## I. Background

Las Brisas Council of Co-Owners, Inc. ("Las Brisas"), appellee, is a condominium regime.  It is composed of approximately eighty condominium owners.  Appellants are an architect and an architectural firm.  Las Brisas stated in its pleadings that it entered into a contract with Cotten Landreth to perform a comprehensive investigation of the physical conditions of the Las Brisas condominium building and develop a proposed maintenance program for Las Brisas's use.  In 2003, Cotten Landreth recommended that Las Brisas retain Ferdinand & Geissel, Inc. ("F&G") to perform a renovation project.  In November 2003, Las Brisas and F&G entered into an agreement to make improvements and repairs to the common areas of the condominium.

Las Brisas claims that it expected Cotten Landreth to provide architectural services in conjunction with the renovation work performed by F&G.[1]  Cotten Landreth did not perform as Las Brisas expected.  Las Brisas brought suit against Cotten Landreth complaining of breach of agency, breach of fiduciary duty, negligence, negligent misrepresentation and breach of contract.

After suit was filed, Las Brisas submitted a certificate of merit, signed by James R. Drebelbis, in an attempt to meet the requirements of section 150.002 of the civil practice and remedies code.  TEX. CIV. PRAC. & REM. CODE ANN. § 150.002 (Vernon Supp. 2008).  This statute requires a plaintiff to file an affidavit of a third party licensed architect

---

[1]Las Brisas filed suit against F&G for breach of contract and breach of warranty.  Las Brisas also filed suit against Mark Treen, individually and doing business as Streem Company and L&M Construction Chemicals.  None of these parties are before the Court in this interlocutory appeal.

practicing in the same area as defendant, setting forth specifically at least one negligent act, error, or omission. *Id.* In his original certificate of merit, filed on March 26, 2007, Drebelbis stated that he was a licensed architect in Texas as well as a licensed professional engineer. Drebelbis averred that he is currently and has been actively engaged in the practice of architecture and engineering for more than thirty-five years. He claimed that he had performed engineering and architectural work on numerous structures, including design, specification, and detailing associated with "defining the components found therein." Drebelbis further opined that he had personal knowledge of the acceptable standards for the practice of architectural services in Texas. Based on his education, professional experience and review, he opined that Cotten Landreth failed to perform architectural services according to accepted industry standards. His affidavit included specific acts of negligence. His affidavit did not state that Drebelbis was practicing in the same area of architecture in which Cotten Landreth practices. Cotten Landreth filed a motion to dismiss, but did not pursue it. Rather, it proceeded with discovery.

On November 29, 2007, Drebelbis signed another affidavit similar to his original one. Thereafter, in response to Cotten Landreth's amended motion to dismiss, Las Brisas filed a third affidavit prepared by Drebelbis.

In his last affidavit, signed on March 3, 2008, Drebelbis opined that during his thirty-five-year career as an architect he had been actively engaged in the practice of architecture. Drebelbis's new affidavit also stated that Cotten Landreth's proposal to Las Brisas offered to provide services with respect to developing a comprehensive investigation of the physical conditions of the existing facility. He said that the type of services Cotten Landreth was asked to perform is similar to the identification and assessment of defects

3

he performs while conducting a forensic investigation.

In this affidavit, Drebelbis also added that he had reviewed Cotten Landreth's website and that its range of services is similar in many respects to the identification and assessment of defects performed when conducting a forensic investigation. He stated that during the years that he has "provided architectural services—including the period of time I have been engaged in my forensic architectural practice—I have provided services to my clients that are the same as, or very similar to, the architectural services [Cotten Landreth] claims to provide is clients and that [Cotten Landreth] specifically proposed to provide Las Brisas in this matter."

The first affidavit says nothing about practicing in the same area and the last affidavit says that he has provided similar services during the period of time he has engaged in his forensic practice. However, even the last affidavit does not state that he is currently practicing in the same area of practice as Cotten Landreth or that he was practicing in the same area of practice at the time he filed his initial affidavit.[2]

In fact, during his deposition, Drebelbis unequivocally stated that Cotten Landreth was engaged in design restoration architecture. He also said that he didn't believe that he had ever worked as a design restoration architect, either as a lead architect or in any other capacity, on a building similar to the size of Las Brisas that was located either on the Gulf Coast or the ocean. In fact, Drebelbis said that he does not seek design restoration work

---

[2]The statute states that the failure to file an affidavit in accordance with Subsection (a) or (b) shall result in dismissal of the complaint. The dismissal may be with prejudice. TEX. CIV. PRAC. & REM. CODE ANN. § 150.002 (d) (Vernon Supp. 2008). Section 150.002 allows a trial court to dismiss with or without prejudice. *LJA Engineering and Surveying, Inc. v. Richfield Investment Corp.*, 211 S.W.3d 443, 446 (Tex. App.–Beaumont 2006, no pet.) Rather than allow for amendment, the statute permits dismissal without prejudice.

and does not engage in that area of practice.

After an oral hearing, the trial court denied the motion to dismiss. By three issues, Cotten Landreth claims that it was entitled to judgment. Cotten Landreth argues that: (1) the affidavit prepared by Drebelbis does not comply with Section 150.002 of Texas Civil Practice and Remedies Code, because: (1) Drebelbis admitted that he has not been practicing in the same area as Cotten Landreth for the last twenty-five years; (2) the trial court erred in considering any of Drebelbis's amended or supplemental affidavits; and (3) the trial court erred in failing to dismiss all claims against Cotten Landreth because all of Las Brisas's claims, including breach of contract, breach of fiduciary duty, and negligent misrepresentation, are merely attempts to recast its claim of professional negligence.

## II. STANDARD OF REVIEW

An order granting or denying a motion to dismiss under chapter 150 of the Texas Civil Practice and Remedies Code is immediately appealable as an interlocutory order. *Id*. § 150.002 (e). This Court reviews the denial of a defendant's motion to dismiss pursuant to section 150.002 under an abuse of discretion standard. *Criterium-Farrell Eng'rs v. Owens*, 248 S.W.3d 395, 397 (Tex. App.–Beaumont 2008, no pet.); *see also Palladian Bldg. Co., Inc. v. Nortex Found. Designs, Inc.*, 165 S.W.3d 430, 433 (Tex. App.–Fort Worth 2005, no pet.); *Gomez v. STFG, Inc.,* No. 04-07-00223-CV, 2007 WL 2846419, at *1 (Tex. App.–San Antonio Oct. 3, 2007, no pet.) (mem. op.). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court does not demonstrate an abuse of discretion. *Palladian,* 165 S.W.3d at 433.

Statutory construction is a question of law we review de novo. *Id.* at 436. Once we determine the statute's proper construction, we must then decide whether the trial court abused its discretion in applying the statute. *Id.* A trial court has no discretion in determining what the law is or applying the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

III. APPLICABLE LAW

Section 150.002 provides, in relevant part:

§ 150.002. Certificate of Merit

(a) in any action . . . for damages arising out of the provision of professional services by a licensed . . . professional, the plaintiff shall be required to file with the complaint an affidavit of a third-party **licensed architect . . . . competent to testify, holding the same professional license as, and practicing in the same area of practice as the defendant,** . . . [setting] forth specifically at least one negligent act, error, or omission claimed to exist and the factual basis for each such claim.
 . . . .

(c) The defendant shall not be required to file an answer to the complaint and affidavit until 30 days after the filing of such affidavit.

(d) The plaintiff's failure to file the affidavit in accordance with Subsection (a) or (b) shall result in dismissal of the complaint against the defendant. This dismissal may be with prejudice.

(e) An order granting or denying a motion for dismissal is immediately appealable as an interlocutory order.

TEX. CIV. PRAC. & REM.CODE ANN. § 150.002(a), (c)-(e). (emphasis added).

Chapter 150 may have been enacted to limit actions against architects and engineers by ensuring that there is some basis for the lawsuit. *See* Michael S. Hull et al., *House Bill 4 and Proposition 12*: *An Analysis with Legislative History, Part Two*, 36 TEX. TECH. L. REV. 51, 54 (2005). In *Palladian,* the court acknowledged that there was no

6

legislative history to support what the legislature intended in enacting the statute. *Palladian*, 165 S.W.3d at 436.

A court looks first to the language of the statute and presumes that the legislature intended the plain meaning of its words. *Fleming Foods of Tex. Inc. v. Rylander*, 6 S.W.3d 278, 286 (Tex. 1999). In determining the plain meaning of a statute, we are guided by section 311.011 of the Texas Government Code (the Code Construction Act), which provides for the common and technical use of the words in the Code. *See* TEX. GOV'T CODE ANN. § 311.011 (Vernon 2005). Every word of a statute must be presumed to have been used for a purpose, and every word excluded from a statute must also be presumed to have been excluded for a purpose.

## IV. ANALYSIS

Cotten Landreth argues in its first issue that the initial affidavit of Drebelbis does not satisfy section 150.002 because Drebelbis was not "practicing" in the same area as the Cotten Landreth architects. Cotten Landreth urges that its services in this dispute involved providing repairs necessary to prolong the life of the Las Brisas condominium building and to provide contract administration services during the construction, including review of the general contractor's payment applications. Cotten Landreth refers to this type of work at "design restoration work." They urge that Drebelbis's work is in the nature of forensic architecture and that he is not "practicing" in the same area. Neither "design restoration" nor "forensic architecture" are defined in the statute or occupations code. *See* TEX. OCC.

7

CODE ANN. § 1051.001 (7)(A)-(H) (Vernon Supp. 2008).[3]  Drebelbis's first affidavit states that:

(1)  He is a registered architect.

(2) He is currently and has been actively engaged in the practice of architecture and engineering for over 35 years.

(3) He has performed engineering and architectural work including the "design, specification, and detailing associated with defining the components found therein."

(4)  He has personal knowledge of the accepted standards for the practice of architectural services through the duration of a project from the initial design through construction.

---

[3] The term "practice of architecture" includes:

(A) establishing and documenting the form, aesthetics, materials, and construction technology for a building, group of buildings, or environs intended to be constructed or altered;

(B) preparing, or supervising and controlling the preparation of, the architectural plans and specifications that include all integrated building systems and construction details, unless otherwise permitted under Section 1051.606(a)(4);

(C) observing the construction, modification, or alteration of work to evaluate conformance with architectural plans and specifications described in Paragraph (B) for any building, group of buildings, or environs requiring an architect;

(D) programming for construction projects, including identification of economic, legal, and natural constraints and determination of the scope and spatial relationship of functional elements;

(E) recommending and overseeing appropriate construction project delivery systems;

(F) consulting, investigating, and analyzing the design, form, aesthetics, materials, and construction technology used for the construction, enlargement, or alteration of a building or environs and providing expert opinion and testimony as necessary;

(G) research to expand the knowledge base of the profession of architecture, including publishing or presenting findings in professional forums; and

(H) teaching, administering, and developing pedagogical theory in academic settings offering architectural education.

(5) He reviewed the architectural and construction documents produced by Las Brisas.

(6) He stated that Cotten Landreth failed to perform architectural services according to industry standards in several respects, including: negligently providing thorough drawings, allowing a vague and imprecise report based on a cursory review of the condition of the premises, allowing an unsealed document to be used as the contract documents for a significant construction project, etc.

(7) He opined that Cotten Landreth did not meet the standard of care common to the architectural industry.

Cotten Landreth's primary argument in this case is that the original affidavit does not specifically state that Drebelbis was "practicing in the same area of practice." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002 (a). Cotten Landreth is correct. Cotten Landreth also relies on deposition testimony that shows that Drebelbis is not practicing in the same area as Cotten Landreth. It further urges that Drebelbis's last affidavit is a sham affidavit because it negates his earlier deposition testimony.

Because section 150.002 is a relatively new statute, there is no case law that interprets what the phrase "the same area of practice" means. There is also nothing in the plain language of the statute or the case law to provide that additional or supplemental affidavits may be filed to attempt to comply with the statute. Finally, there is nothing in the statute or case authority suggesting one way or the other, whether the trial court or reviewing court may look outside the "four corners" of the affidavit to a deposition or other discovery in order to interpret the affidavit filed pursuant to the statute.

Las Brisas urges a broad construction—Drebelbis's first affidavit is sufficient because it establishes that he was practicing as an architect, rather than requiring that he specifically state that he was practicing in the specific area that Cotten Landreth was

9

practicing in. Las Brisas claims that Cotten Landreth was hired to perform a comprehensive investigation of the physical conditions of the Las Brisas building and that this conduct occurred well before the "design restoration" project began. In other words, according to Las Brisas, Cotten Landreth was performing forensic architectural services before it began its design restoration services, so it was practicing in the same area as Drebelbis.

The statute appears to require initial criteria to be met with regard to the affiant's qualifications. First, the affiant must be a registered architect. TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a). Drebelbis's affidavit sufficiently states his professional registration. Second, the architect must be licensed in Texas. *Id.* Drebelbis's affidavit also satisfies this part of the statute. *Id.* Finally, the professional must actively be practicing. *Id.* Again, Drebelbis's affidavit is sufficient in this regard. In addition, however, the statute states that the architect or professional must be practicing "in the same area of practice as the defendant." *Id.*

Cotten Landreth urges that we should look for guidance to the Medical Liability and Insurance Improvement Act (MLIIA) in determining what is required of an affidavit under the statute at issue here. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.351, 74.401(a)(2) (Vernon 2005 & Supp. 2008). The MLIIA modified the liability laws for health care claims to address what the Legislature described as a medical "crisis [that] has had a material adverse effect on the delivery of medical and health care in Texas." Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 1.02(a)(6), 1977 TEX. GEN. LAWS 2039, 2040 (former TEX. REV. CIV. STAT. art. 4590i, § 1.02(a)(6)); *see also* Act of June 2, 2003, 78th Leg., R. S., ch. 204,

10

§ 10.11, 2003 TEX. GEN. LAWS *847, 884 (reiterating the Legislature's concern about the gravity of an ongoing "medical malpractice insurance crisis" caused in part by an increased number of health care liability claims since 1995); *Villafani v. Trejo*, 251 S.W.3d 466, 468 (Tex. 2008); *Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 846 (Tex. 2005).

Part of the amendments to the medical malpractice statute require plaintiffs to timely file an expert report that includes a fair summary of the expert's opinions on the applicable standards of care, the manner in which the care rendered by the defendant physician or health care provider failed to meet those standards, and the causal relationship between that failure and the injury, harm, or damages claimed. Here the certificate of merit must similarly set forth at least one negligent act, error, or omission and the factual basis for each such claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a). No statement of causation is required under section 150.002.

The legislature enacted the MLIIA to stem what it believed was an insurance crisis. In determining whether a witness is qualified to testify in a medical malpractice case, a court must consider whether the witness is actively practicing medicine in an area of practice relevant to the claim. *See id.* § 74.401(c)(2). The malpractice statute does not require the expert testifying in a medical malpractice case to be a specialist in the particular branch of the profession for which testimony is offered; the statute setting out the requisite qualifications focuses not on the defendant doctor's area of expertise, but on the condition involved in the claim. *Blan v. Ali*, 7 S.W.3d 741, 746 (Tex. App.–Houston [14th Dist.] 1999, no pet.). It requires that the expert have the "knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to

11

give an opinion on that particular subject." *Roberts v. Williamson*, 111 S.W.3d 113, 121 (Tex. 2003) (quoting *Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996).

Here, however, the design professional statute specifically requires the initial affidavit to be filed contemporaneously with the complaint by a design professional who is registered or licensed "*and practicing in the same area of practice as the defendant.*" § 150.002(a). (emphasis added). The initial affidavit filed by Drebelbis does not meet that standard. Drebelbis simply does not state in his affidavit that he practices in the same area of practice as Cotten Landreth. Further, there is no language in his affidavit that shows he is practicing in the same area of practice as Cotten Landreth.

The medical malpractice statute also allows a party filing a deficient report one thirty-day extension to cure a deficiency. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c). The design professional statute does not. Rather, it states that the contemporaneous filing requirement does not apply if the period of limitations will expire within ten days of filing and there are time constraints. *See id.* § 150.002(b). Because the design professional statute does not, by its plain language, allow for amendment under the circumstances presented here, we believe the statute required the trial court to look only to the initial affidavit filed by Drebelbis. Amended and supplemental affidavits are not contemplated by the plain wording of the statute. Had the legislature desired to give a design professional an opportunity to correct the affidavit, it could have provided it in the same manner it did in the medical malpractice statute. *See id.* § 74.351(c). Under the plain language of the statute, Drebelbis's later affidavits may not be considered.[4]

---

[4]If the trial court dismisses without prejudice, a plaintiff would have an opportunity to file an affidavit in the case when refiled.

The supreme court has also instructed that when interpreting the medical liability statute, a report is limited to what is contained within its "four corners." *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001). Because the statute focuses on what the report discusses, the only information relevant to the inquiry is the information contained within the four corners of the document. *Id.* Likewise, the statute here focuses on what the design professional's report must discuss. Because nothing in the statute suggests or anticipates that the trial court may look outside of the "four corners" of the report for guidance, we hold, under the plain language of the statute, it cannot.

By enacting the statute at issue here, the legislature did not specifically identify a crisis that needed to be averted as it did when enacting the medical malpractice act. The statute's plain language does not allow much latitude. Because we have previously determined that the original certificate of merit did not meet the basic statutory requirements of section 150.002, as it does not state that Drebelbis was practicing in the same area of practice as the defendant, the trial court abused its discretion in denying the motion to dismiss. We further hold that, because the statute does not include language allowing additional or amended affidavits to be filed, the trial court did not have the authority to consider Drebelbis's other affidavits in determining whether the case should be dismissed. We sustain Cotten Landreth's first and second issues.

By its third issue, Cotten Landreth claims that the trial court abused its discretion in failing to dismiss Las Brisas's other causes of action. Again, we rely on the plain wording of the statute, which applies only to claims for professional services. If a plaintiff was not claiming a negligent act, error or omission, a certificate of merit is not required. *See* TEX.

13

CIV. PRAC. & REM. CODE. ANN. § 150.002(a); *see also Gomez v. STFG*, *Inc.* 2007 WL 2846419, at *2. In *Gomez*, our sister court held that non-negligence claims are outside the scope of professional services. 2007 WL 2846419, at *2. There, the court held that chapter 150 acknowledges that "a certificate of merit requirement will not apply to all suits involving professional engineers and architects because it limits the requirement to actions arising out of the provision of professional services and specifically excludes suits regarding the payment of fees." *Id*.; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a), (g). The *Gomez* court opined that claims of breach of contract, wrongful termination, breach of good faith and fair dealing, breach of fiduciary duty and breach of loyalty should not be included in chapter 150's requirements. *Id*. at *3. We agree with the San Antonio court that a certificate of merit does not require dismissal of an entire case, but rather requires dismissal of only those causes of action arising from the provision of professional services. Because the trial court did not, in fact, make any ruling in this regard, it would be advisory for this Court to decide which of the pleadings are claims for professional services and which are not. We overrule Cotten Landreth's third issue.

## V. WAIVER

Las Brisas also argues that Cotten Landreth waived its right to dismissal through participation in discovery, taking depositions, and filing a motion for summary judgment. We note that the statute is silent with regard to a deadline to file a motion to dismiss. The legislature has imposed deadlines when it intends to do so. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (establishing a twenty-one day deadline to object to an expert report in a health care liability claim). Waiver is an intentional relinquishment of a known right or

14

intentional conduct inconsistent with claiming a right. *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987). In *Jernigan v. Langley*, the supreme court held that a physician who had waited 600 days after receiving an expert report to move for dismissal of the claim did not waive his right to pursue a motion to dismiss under the health care liability statute. 111 S.W.3d 153, 157 (Tex. 2003).

Here, the statute does not contain a deadline. Cotten Landreth took Drebelbis's deposition on February 20, 2008. It is there that Cotton Landreth learned that Drebelbis did not practice in the same area. Eight days later, Cotten Landreth filed its amended motion to dismiss. There was no evidence in the record showing an intent to waive its right to dismissal under the statute.

## VI. Conclusion

We reverse and remand the order of the trial court for further proceedings consistent with this opinion.

ROSE VELA
Justice

Opinion delivered and filed
this 5th day of February, 2009.

15