In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00052-CV

                                                ______________________________

 

 

                                      NATEX
CORPORATION, D/B/A

NATEX CORPORATION
ARCHITECTS, Appellant

 

                                                                V.

 

                   PARIS INDEPENDENT SCHOOL DISTRICT, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 6th Judicial District Court

                                                             Lamar County, Texas

                                                            Trial
Court No. 77428

 

                                                                                                   

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                        Opinion by Justice Moseley








                                                                   O P I N I O N

 

            This
is an interlocutory appeal by Natex Corporation, d/b/a Natex Corporation
Architects (Natex), a defendant architectural firm, of a denial of a
motion to dismiss the suit brought against it by Paris Independent School
District (PISD).  Natex maintains that
dismissal is required because PISD failed to file a certificate of merit
pursuant to Section 150.002 of the Texas Civil Practice and Remedies Code when
suit was initially filed against it.  For
the reasons set forth within, we affirm the trial court’s judgment. 

I.          FACTUAL AND PROCEDURAL
HISTORY

            In
June 2007, PISD and Natex entered into eight separate
American Institute of Architects form contracts for architectural design
services related to renovations of certain school buildings in the district and
for the construction of a new athletic stadium, there being separate contracts
prepared for each of the seven buildings and the new stadium.  The contracts specified the financial
parameters of the work to be done, clarified the overall budgets in dollar
amounts, and set forth the obligations of the parties, but left the time
parameters of the contracts to be determined at a later date.  Under the contracts, Natex was to provide “Schematic
Design Documents based on the mutually agreed-upon program, schedule, and
budget for the Cost of the Work.”  

            After
the passage of about a year, PISD called Natex to inquire about an “exit
strategy” from the relationship because it believed that the architectural work
under the contract was not being completed in a timely manner and “time [wa]s of
the essence.”  Natex responded by sending
the district invoices for work it alleged that it had completed.  A few days later, the PISD Board of Trustees
resolved to terminate the agreements for what it deemed as Natex’s breach of
the contracts.  PISD gave written notice
to Natex that termination was due to failure to provide “schematic design
development documents for approval,” failure to “provide a schedule for any of
the projects except the high school project,” failure to “complete any of its
work in accordance with the schedule,” and for requests for “payment to which
it is not entitled.”  

            PISD
filed a suit against Natex, alleging that Natex had breached the contracts,
asking the trial court for a declaration of the parties’ rights, and seeking
recovery of sums already paid.  The
original petition alleged that Natex failed to timely provide them with
necessary documents to allow the district to timely bid the project, causing
them to suffer increased costs of labor and material.  When Natex “finally did produce some ‘construction
documents,’ they were so out of touch with Plaintiff’s budget for the project
that the documents that were produced were unusable.”  PISD claimed Natex “failed to perform any
substantial work pursuant to any of these contracts” despite having “been paid
in excess of seven hundred thousand dollars for its work on the high school and
stadium projects.”  The petition
complained that Natex had “requested additional sums of money in excess of that
which it is due under the Agreement[s].” 
PISD further prayed the trial court to enter a declaration of rights of
the parties under the contracts, reasonable attorney’s fees, and consequential
damages for increased costs of construction due to the breach.

            Natex
answered the suit, claiming that delays were attributable to PISD’s failure to
acquire lands for the projects in a timely manner and that PISD had also made
demands of the designs which, if incorporated, would exceed the budget.  Natex also filed a counterclaim for breach of
contract for nonpayment of fees “currently due and owing by the District to
Natex [in the] amount [of] $1,018,800.48 plus pre-judgment interest.”  

            After
the parties had conducted discovery for several months, PISD filed an amended
petition adding claims of negligence, negligent misrepresentation, breach of
fiduciary duty, and money had and received. 
In this amended petition, PISD claimed that Natex was negligent because
it 

failed to perform its duties with reasonable care,
technical skill, ability, and diligence when it failed to timely coordinate a
design team and employ professional engineers for the Projects, when it submitted
billings to PISD that was not supported by actual work performed on the
Projects, and when it failed to communicate with PISD as is required to
maintain an adequate progression of the work required on the Projects.  

 

“Natex negligently represented
that it could design the drawings and plans and specifications for the Projects
with reasonable care, technical skill, ability, and diligence ordinarily
required of Architects.  It further
negligently represented through billing invoices that it performed certain work
on the Projects, when in fact, it had not.” 
PISD alleged further that Natex had breached a fiduciary duty and had
received money “for work that it did not perform on the Projects and for
alleged ‘construction documents’ that are useless to PISD and interest on those
amounts.”  To its amended petition, PISD
attached the affidavit of Bruce Weir, “licensed Architect in the States [sic]
of Texas.” 

            Weir’s
supporting affidavit recited the usual predicatory statements of age and mental
competency and then stated, “I am currently a practicing architect in good
standing.  I have over 28 years of experience
in the design/construction industry and have been a licensed practicing
architect since 1990.”  Weir’s affidavit
opined that after having reviewed several documents itemized in his affidavit,
he had concluded that the documents “indicate[d] that Natex failed to timely
coordinate a design team and employ engineering professions [sic] for the
Projects.  Further, Natex failed to
perform any of its duties for improvements to Travis Junior High School, Paris
High School Renovations, Justiss Elementary School, Givens Elementary School,
Crockett Elementary School, and the New Paris Athletic Stadium.”  His affidavit recited that he had deduced
that Natex’s failures to timely coordinate a design team and employ engineering
professionals “[wa]s a departure from the reasonable care, technical skill,
ability, and diligence required of Architects in the same or similar
circumstances and constitutes negligence,” and that the “billing to PISD that
was not supported by the actual work that was performed” and that its failure
to communicate with PISD was also a departure from the standard of care.  

            Natex
filed a motion to dismiss the suit based on Section 150.002 of the Texas Civil
Practice and Remedies Code because when PISD filed its “Original Petition[,]
the District failed to contemporaneously file a Certificate of Merit as
required by the statute.”  Alternatively,
Natex argued that although “Plaintiff’s First Amended Petition did attach an
affidavit,” “that affidavit did not purport to serve as a certificate of merit,
and it did not meet the specific requirements” of the statute.  The trial court denied Natex’s motion to
dismiss.  Natex reasserts these arguments
on appeal to support its complaint that the trial court erred in failing to
dismiss PISD’s suit.[1]  

II.        ANALYSIS

            A.        Standard of Review 

            An
order granting or denying a motion to dismiss made pursuant to Chapter 150 of
the Texas Civil Practice and Remedies Code is immediately appealable as an
interlocutory order.  Tex. Civ. Prac. & Rem. Code Ann. §
150.002(e)[2];
Benchmark Eng’g Corp. v. Sam Houston Race
Park, 316 S.W.3d 41, 44 (Tex. App.––Houston [14th Dist.] 2010, no
pet.).  This Court reviews the denial of
a defendant’s motion to dismiss pursuant to Section 150.002 under an abuse of
discretion standard.  Benchmark Eng’g, 316 S.W.3d at 44; Landreth v. Las Brisas Counsel of Co-Owners,
Inc., 285 S.W.3d 492, 496 (Tex. App.––Corpus Christi 2009, no pet.); Criterium-Farrell Eng’rs v. Owens, 248
S.W.3d 395, 397 (Tex. App.––Beaumont 2008, no pet.); see also Palladian Bldg. Co.
v. Nortex Found. Designs, Inc., 165 S.W.3d 430, 433 (Tex. App.––Fort Worth
2005, no pet.); Gomez v. STFG, Inc.,
No. 04-07-00223-CV, 2007 WL 2846419, at *1 (Tex. App.––San Antonio Oct. 3,
2007, no pet.) (mem. op.).  An abuse of
discretion occurs when the trial court acts in an unreasonable and arbitrary
manner or without reference to any guiding rules or principles. Palladian, 165 S.W.3d at 433 (citing Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241–42 (Tex. 1985)). 
Merely because a trial court may decide a matter within its discretion
in a different manner than an appellate court does not demonstrate an abuse of
discretion.  Id.  However, a clear failure
by the trial court to analyze or apply the law correctly also constitutes an
abuse of discretion.  Walker v. Packer, 827 S.W.2d 833, 840
(Tex. 1992).

            Natex
made no request for findings of fact or conclusions of law.  We presume the trial court’s judgment implies
all necessary findings of fact to support its ruling, and will sustain it on
any reasonable theory that is consistent with the evidence and the applicable
law, considering only the evidence favorable to the decision.  Worford
v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990); Jones v. Smith, 157 S.W.3d 517, 520 n.3 (Tex. App.—Texarkana 2005,
pet. denied).  

            B.        The Statute 

            Section
150.002 of the Texas Civil Practice and Remedies Code provides:

            (a)        In any action . . . for damages arising
out of the provision of professional services by a licensed or registered
professional, the plaintiff shall be required to file with the complaint an
affidavit of a third-party licensed architect . . . competent to
testify, holding the same professional license as, and practicing in the same
area of practice as the defendant, which affidavit shall set forth specifically
at least one negligent act, error, or omission claimed to exist and the factual
basis for each such claim.  The
third-party . . . licensed architect shall be licensed in this state and
actively engaged in the practice of . . . engineering.

 

Tex.
Civ. Prac. & Rem. Code Ann. § 150.002.  “Chapter 150 may have been enacted to limit
actions against architects and engineers by ensuring that there is some basis
for the lawsuit.”  Landreth, 285 S.W.3d at 496; Owens,
248 S.W.3d at 399.  But see Benchmark Eng’g,
316 S.W.3d at 45–46) (disagreeing with Owens
and holding certificate of merit need not incorporate or refer to a
standard of care). 

            C.        Section 150.002 Does Not Apply to PISD’s
Original Petition

            Natex
contends that Section 150.002 applied to PISD’s original petition because the
district’s claims arose out of the provision of professional services.  It focuses its argument on the claim in PISD’s
original petition that Natex’s designs were “untimely” and “unusable.”  Natex urges the Court to look at that
underlying basis of the claims alleged in the original petition to determine if
PISD’s “contract claim could be considered a mis-cast negligence claim.” 

            As
noted in Ashkar Engineering Corp. v. Gulf
Chemical & Metallurgical Corp.:

Section 150.002(a) states that it applies “in any
action for damages arising out of the provision of professional services by a
design professional.” This language suggests that the intent of Section 150.002
is that it apply broadly and that it is not restricted to any specific cause of
action. Other language in subsection (a) provides, however, that, in the
affidavit, the expert is required to have “set forth specifically at least one
negligent act, error, or omission claimed to exist and the factual basis for
such claim . . . .”  This language
suggests that Section 150.002 is intended only to apply to negligence claims.

 

No. 01-09-00855-CV, 2010 WL
376076, at *4 (Tex. App.––Houston [1st Dist.] Feb. 4, 2010, no pet.) (mem.
op.).  

            Every
word of a statute must be presumed to have been used for a purpose, and every
word excluded from a statute must also be presumed to have been excluded for a
purpose.  Landreth, 285 S.W.3d at 497. 
Keeping this rule in mind, along with other rules of statutory construction,[3]
Texas courts have decided that Section 150.002 applies only to negligence or
claims based on negligent acts.  “When
the plaintiff does not claim a negligent act, error or omission exists, and is
not required to make such an allegation as an element of its cause of action, a
certificate of merit is not required . . . .”  Kniestedt v. Sw. Sound & Elecs.,
Inc., 281 S.W.3d 452, 455 (Tex. App.––San Antonio 2007, no pet.).  “To require such an affidavit outside the
context of a negligence cause of action would require an affidavit that had no
relevance to the suit and would render the statute meaningless.”  Parker
County Veterinary Clinic, Inc. v. GSBS Batenhorst, Inc., No. 2-08-380-CV,
2009 WL 3938051, at *3 (Tex. App.––Fort Worth Nov. 19, 2009, no pet.) (mem.
op.); Curtis & Windham Architects,
Inc. v. Williams, 315 S.W.3d 102, 108 (Tex. App.––Houston [1st Dist.] 2010,
no pet.).  Even Landreth, Natex’s most-cited case, reiterated the rule that “[i]f a
plaintiff was not claiming a negligent act, error or omission, a certificate of
merit is not required.”  Parker County, 2009 WL 3938051, at *3
(citing Gomez v. STFG, Inc., No.
04-07-00223-CV, 2007 WL 2846419, at *2 (Tex. App.––San Antonio Oct. 3, 2007, no
pet.) (mem. op.) (holding Chapter 150 does not apply to breach of contract and
breach of fiduciary duty claims); Consol.
Reinforcement, 271 S.W.3d at 893.  We
conclude, as did our sister courts, that the applicable version of Section 150.002
applies only to negligence claims and not to claims based on contract.    

            We
now analyze Natex’s argument that PISD’s original breach of contract and
declaratory judgment action was really an artfully pled negligence claim,
despite its base in contract.  “Because
we are not bound by the labels used by the parties, we look to [PISD’s]
pleadings and determine for ourselves what claim” it asserted.  Ashkar
Eng’g, 2010 WL 376076, at *7.  To
distinguish between tort and contract claims, we consider the source of the
duty owed and the nature of the remedy sought.  Parker
County, 2009 WL 3938051, at *3 (citing Formosa
Plastics Corp. USA v. Presidio Eng’rs & Contractors, Inc., 960 S.W.2d
41, 45 (Tex. 1998)).  If PISD’s causes of
action in the original petition arose only from a violation of a duty imposed
by law, the cause of action sounds in tort. 
Id.  If the causes of action arose from a duty
imposed by a contract, the cause of action is for breach of contract.  Id.  A contractual relationship between the
parties may create duties under both contract and tort law, and “[t]he acts of
a party may breach duties in tort or contract alone or simultaneously in both.”
 Id.  The nature of the remedy is instructive on
the issue.  Id. at *4.  “When the only
loss or damage is to the subject matter of the contract, the plaintiff’s action
is ordinarily on the contract.”  Id.   


            Natex
relies heavily on Ashkar Engineering and
Parker County.  The court
in Ashkar examined claims in the plaintiff’s petition that the engineer
failed to adequately plan, progress, or complete engineering services, and
concluded that the breach of contract claims in the plaintiff’s petition
mirrored negligence claims.  Ashkar Eng’g,
2010 WL 376076, at *10.  In so deciding,
it relied on a key distinguishing fact. 
The Ashkar court clarified “the parties before us do not have a
written contract.  GCMC does not direct
us to any specific provision of a contract giving rise to any specific duties
by Ashkar to adequately design, engineer, test, or oversee the construction of
the expansion joint.”  Id.  Natex complains that the original petition did
not refer “to any specific provision of a contract giving rise to any specific
duties”; rather, PISD’s petition was based on “untimely” and “unusable”
construction documents.  PISD complained
that the documents were untimely produced and “unusable” because the documents
produced “were so out of touch” with the available budget for the construction
that they could not be accommodated for use by PISD.  Provisions in the contracts clearly required
Natex to “provide Schematic Design Documents based on the mutually agreed-upon
program, schedule, and budget for the Cost of the Work,” identified numerically
in each contract.  Failure to mention
these specific provisions of the contracts in the original petition does not
deny their existence since the written contracts were attached to the petition,
and it is clear that the source of the duty giving rise to PISD’s suit was
derived from the responsibilities springing from those contracts.  Furthermore, Ashkar Engineering looked
to the nature of the remedy sought, and further stated, “Further, GCMC
generally seeks damages for repairs and remediation, and not economic loss
related directly to the subject of the contract . . . .  This suggests that GCMC’s claims do not sound
in contract.”  Id.  Here, PISD sought consequential damages and
attorney’s fees recoverable in a contract dispute in its original petition, not
damages in tort. 

            In its reasoning, Ashkar
Engineering consistently referred to Parker County.  In that case, just as in this case, it
was the written contract that “gave rise to a duty,” and “it is the breach of
this duty that Appellants complain[ed] about.” 
Parker County, 2009 WL 3938051, at *4.  Parker
County noted that the petition sought consequential damages, concluded the
basis for the petition was breach of contract, and concluded that Section
150.002 did not apply.  In so doing, it
rejected the precise notion Natex advances, i.e., that the statute should apply
merely because this is a suit against an architecture professional.  Id. at
*4–5. 

            PISD
and Natex had written contracts, and, as explained above, the source of the
duties referenced in the original petition stem from the contracts.  The original petition sought a declaration of
rights under the contracts and consequential damages for the breach of those
contracts.  Breach of contract and
declaratory judgment actions do not require that they be supported by the
certificate of merit affidavit mandated by Section 150.002.  Curtis
& Windham Architects, 315 S.W.3d at 108 (action for declaratory
judgment did not require certificate of merit since it did not implicate a
negligent act, error, or omission); Parker
County, 2009 WL 3938051, at *5.  Thus,
we conclude PISD’s claims in the original petition were based in contract.  As such, they were not required to
contemporaneously file a certificate of merit. 
We overrule Natex’s first point of error.[4] 

            D.        Was the Affidavit of Weir on the Amended
Petition Sufficient?

            Section 150.002 requires four
initial criteria to be met with regard to the affiant’s qualifications:  the affiant (1) must be a registered
architect (2) who is licensed to practice in Texas and (3) must actively be
practicing (4) “in the same area of practice as the defendant.”  Tex.
Civ. Prac. & Rem. Code Ann. § 150.002(a); Landreth, 285 S.W.3d at 498. 
In this case, Weir stated he was a currently practicing, licensed architect
in Texas in good standing, with “over 28 years of experience in the
design/construction industry.”  There is
no argument that the affidavit fails to meet requirements one through
three.  Natex argues that Weir is not
practicing in the same area as Natex.  

            Here,
although the affidavit does not specifically state that Weir practices in the
same area as Natex, such specific and precise language is not required where
the court receives “ample information reflecting the fact that he practices in
the same area.”  Benchmark Eng’g, 316 S.W.3d at 49.[5]  Weir stated he has a “greater degree of technical
and specialized knowledge concerning the architectural discipline than the
average person” and claimed his expertise “related to the specific issues in
this lawsuit.”  Yet, Natex takes the
position that the fact Weir is an architect who provides design services is not
enough since Natex was hired “to provide architecture and design services in the specific areas of school renovations
and new construction.”  (Emphasis
added.)  

            To
support its proposition, Natex relies on Landreth,
which is distinguishable from this case. 
Las Brisas filed suit against Landreth for breach of agency, breach of
fiduciary duty, negligence, negligent misrepresentation, and breach of
contract.  285 S.W.3d at 494.  Las Brisas filed a certificate of merit “[a]fter
suit was filed.”  Id.  The certificate of merit
did not state whether Las Brisas’s architect practiced in the same area of
practice as Landreth.  Id.  During discovery, the architect testified that
while Landreth was engaged in design restoration architecture, he had never
worked as a design restoration architect. 
Id. at 495.  The court considered the architect’s
deposition testimony and found that the trial court erred in failing to dismiss
only the negligence claims.  Id. at 500.  

            In
this case, we see no requirement in the law suggesting that Weir would have to
practice in the specific field of “architectural design of educational
facilities” in order to qualify under the statute.[6]  The Texas Occupations Code merely requires
that the “architectural plan[s] or specification[s] for . . . a new building
having construction costs exceeding $100,000,” or “alteration[s] or addition[s]
[to an existing building] exceeding $50,000,” “is or will be used for education”
must be made by an architect.  Tex. Occ. Code Ann. § 1051.703 (Vernon
2004).  The Occupations Code does not
differentiate between the different fields of architecture.  Tex.
Occ. Code Ann. § 1051.001(1) (Vernon Supp. 2010).  In fact, it defines “practice of architecture”
to include

a service or creative work applying the art and
science of developing design concepts, planning for functional relationships
and intended uses, and establishing the form, appearance, aesthetics, and
construction details for the construction, enlargement, or alteration of a
building or environs intended for human use or occupancy, the proper
application of which requires education, training, and experience in those
matters.  The term includes: 

 

                        (A)
establishing and documenting the form, aesthetics, materials, and construction
technology for a building, group of buildings, or environs intended to be
constructed or altered; 

 

                        (B)
preparing, or supervising and controlling the preparation of, the architectural
plans and specifications that include all integrated building systems and
construction details, unless otherwise permitted under Section 1051.606(a)(4); 

 

                        (C)
observing the construction, modification, or alteration of work to evaluate
conformance with architectural plans and specifications described in Paragraph
(B) for any building, group of buildings, or environs requiring an architect; 

 

                        (D)
programming for construction projects, including identification of economic,
legal, and natural constraints and determination of the scope and spatial
relationship of functional elements; 

 

                        (E)
recommending and overseeing appropriate construction project delivery systems; 

 

                        (F)
consulting, investigating, and analyzing the design, form, aesthetics,
materials, and construction technology used for the construction, enlargement,
or alteration of a building or environs and providing expert opinion and
testimony as necessary . . . .

 

Tex.
Occ. Code Ann. § 1051.001(7). 
This is what Natex was hired to do. 


            Looking
at the affidavit in the light most favorable to the court’s ruling, we find
statements that Weir was a currently practicing architect, experienced in
design and construction, with expertise “related to the specific issues in this
lawsuit,” were sufficient to impress upon the judge’s mind that Weir was
practicing in the same area of practice as Natex, who was hired to provide
design and construction architectural services. 
Therefore, we conclude that the trial court was provided with sufficient
information to make the factual determination that Weir practiced in the same
area of practice as Natex.  The trial
court did not abuse its discretion in making this factual finding.  

III.       CONCLUSION


            We affirm the trial court’s
judgment.  

 

 

 

                                                                                    Bailey
C. Moseley

                                                                                    Justice

Date Submitted:          October 6, 2010

Date Decided:             November 1, 2010

 

 

 











[1]PISD
claimed that Natex waived its motion to dismiss.  Because of the nature of the disposition of
this case, we need not discuss this point of error.

 





[2]Chapter
150 of the Texas Civil Practice and Remedies Code as modified by the 79th Texas
Legislature is the version applicable to this case.  See
Act of May 12, 2005, 79th Leg., R.S., ch. 189, § 12, 2005 Tex. Gen. Laws 348
(amended 2009) (current version at Tex.
Civ. Prac. & Rem. Code Ann. §§ 150.001–.003 (Vernon Supp. 2010));
Act of May 18, 2005, 79th Leg., R.S., ch. 208, §§ 2, 4–5, 2005 Tex. Gen. Laws
369, 369–70 (amended 2009) (current version at Tex. Civ. Prac. & Rem. Code Ann. §§ 150.001–.003).  All reference in this opinion will be to the
prior version of 150.002.  





[3]Statutory
construction is a question of law we review de novo.  Benchmark
Eng’g, 316 S.W.3d at 44–45 (citing Consol.
Reinforcement, L.P. v. Carothers Exec. Homes, Ltd., 271 S.W.3d 887, 891
(Tex. App.––Austin 2008, no pet.).  We construe
statutory language to ascertain and effectuate legislative intent, and we
consider the plain and common meaning of each word in the statute.  Tex.
Mut. Ins. Co. v. Sonic Sys. Int’l, Inc., 214 S.W.3d 469, 476 (Tex.
App.––Houston [14th Dist.] 2006, pet. denied).  We also view statutory terms in context and
give them full effect.  Id.  We presume every word of a statute was used
for a purpose, and every word excluded from a statute was excluded for a
purpose.  Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex. 1981);
Eastland v. Eastland, 273 S.W.3d 815,
821 (Tex. App.––Houston [14th Dist.] 2008, no pet.). 





[4]Natex
argues that the trial court erred in implicitly allowing PISD to cure its
failure to file a certificate of merit by allowing it to file Weir’s affidavit
with the amended petition.  Because we
conclude Section 150.002 did not apply to the original petition, we reject
Natex’s argument.  





[5]The
statute says that  “the plaintiff shall be required to file with the
complaint an affidavit of a third-party licensed architect, . . . holding the
same professional license as, and practicing in the same area of practice as
the defendant, which affidavit shall set forth specifically at least
one negligent act, error, or omission claimed to exist and the factual basis
for each such claim.”  Tex. Civ. Prac. & Rem. Code Ann. §
150.002(a) (emphasis added).  That does
not mean that the affidavit must slavishly track the wording of the statute or
that the court hearing a challenge to the qualifications of the affiant must
rely solely on the content of the affidavit.  In other words, although the statute requires
the affidavit to be made only by certain qualified persons, it is not required
that the affidavit set out those qualifications.





[6]Natex
argues that Weir must practice in the same area of architecture.  The statute merely says Weir must be “practicing
in the same area of practice.”  Tex. Civ. Prac. & Rem. Code Ann. §
150.002.